FIFTH NAT. BANK *v.* ARMSTRONG, (FARMERS' NAT. BANK *et al.*, Interpleaders.)

*(Circuit Court, E. D. Missouri, E. D.   October 4, 1889.)*

BANKS AND BANKING—INSOLVENCY—NEGOTIABLE PAPER—RESTRICTIVE INDORSEMENT.
   The claimant bank sent to the F. Bank a sight draft, drawn on a third party, indorsed, "Pay" F. Bank, or order, "for collection for" claimant bank.   It was the practice of the F. Bank, in its dealings with claimant, to credit the latter on the day of receipt for all drafts, checks, etc., sent for collection, that were payable at sight or on demand, and the balance thus created was subject to be drawn on; but, if the paper was not paid, it was charged back to claimant.   On receipt of the draft, the F. notified claimant that it had been credited, "subject to payment;" but the credit was not drawn against, nor were advances made on the faith of it.   Claimant merely kept a memorandum of its transmission for collection.   The F. sent the draft to its

reserve agent, indorsed for collection, and the amount of it was counted as a part of the F.'s reserve fund, though this fact was not known to claimant. *Held* that, the indorsement being restrictive, the F. acquired no title to it; and that upon the insolvency of the F., before notification of the collection of the draft, the claimant was entitled to the proceeds of it in the hands of the collecting agent.

At Law.

This is a controversy between the defendants concerning the ownership of a certain fund now in the custody of the complainant. The case is to be decided with reference to the following facts: On June 6, 1887, the Farmers' National Bank of Portsmouth, Ohio, sent to the Fidelity National Bank a sight draft, in the usual form, drawn by Samuel J. Huston on Thomas Shelby, of Lexington, Mo., in the sum of $4,100. The draft was indorsed as follows: "Pay Fidelity National Bank of Cincinnati, Ohio, or order, for collection for Farmers' National Bank of Portsmouth, Ohio. J. M. WALL, Cashier." On June 11, 1887, the Augusta National Bank of Staunton, Va., sent the Fidelity Bank a similar draft for $1,216, drawn on Henry Rohr, St. Johns, Kan., which was indorsed in the same form as last described. Both of these drafts were forwarded by the Fidelity Bank to the Fifth National Bank of St. Louis, Mo., for collection for its account; and the latter bank proceeded to collect the same through subordinate agencies, and was notified of the payment thereof on June 21st and 23d, respectively. The Fidelity Bank was insolvent from and after June 6, 1887, and was seized by the comptroller of the currency at 9 A. M., June 21, 1887, and put into liquidation. The Portsmouth and Staunton banks thereafter claimed the proceeds of the respective drafts, found in the hands of the Fifth National Bank, and the latter bank filed its bill of interpleader on August 3, 1887. It was the uniform practice of the Fidelity Bank, in its dealings with the Portsmouth bank, to give the latter credit, on the day of receipt, for all checks, drafts, etc., sent to it for collection, that were payable at sight or on demand; and the balance so created was subject to be drawn upon by the Portsmouth bank. The Fidelity Bank also paid interest, at 2½ per cent. per annum, on the daily balances in favor of the Portsmouth bank, arising from such credits. But if paper forwarded for collection, and credited as aforesaid, was not paid, it was the invariable custom to charge the same back against the account of the Portsmouth bank. The method of dealing here described was well known to the Portsmouth bank, and was assented to by it. The Shelby draft was credited by the Fidelity Bank to the Portsmouth bank, in conformity with the practice in question. Notice was given by mail that the draft had been credited, "subject to payment;" but the credit was not drawn against by the Portsmouth bank, nor were any advances made on the strength thereof, and in point of fact the Fidelity Bank closed its doors before it was notified that the draft was paid. The Portsmouth bank did not charge the draft against the Fidelity, but merely kept a memorandum of the transmission of the same to the latter bank for collection, having been advised by the drawer that it would probably not be paid by the drawee on presentation. It further appears that, by an arrangement between the Fifth National Bank and the Fidelity, the amount of

the Shelby draft, after it was indorsed to the Fifth National for collection, was counted as a part of the reserve of the Fidelity,—the Fifth National being a designated reserve agent of the Fidelity; but the Portsmouth bank, so far as shown, had no knowledge of such fact. The method of dealing as between the Fidelity Bank and the Staunton bank did not differ from that last described with the Portsmouth bank, in any such respect as will distinguish the two cases, or justify a different ruling as to the claims interposed by the respective banks. The question arising on this state of facts is whether the Fifth National should turn over the proceeds of the two drafts, now in its hands, to the Portsmouth and Staunton banks, respectively, or to the receiver of the Fidelity Bank.

*William B. Burnet* and *Wm. G. Hammond*, for the Fidelity National Bank.

*J. M. McGillivray* and *A. T. Holcomb*, for the Farmers' National Bank.

*Jno. D. Stevenson*, for the Augusta National Bank.

THAYER, J., (*after stating facts as above.*)  The indorsement by which the Fidelity Bank acquired the possession of the drafts in controversy was clearly a restrictive indorsement. It was an indorsement that destroyed the negotiability of the drafts, except for purposes of collection, and gave notice to all parties through whose hands they passed that they were the property of the Portsmouth and Staunton banks, respectively. By virtue of the indorsements alone, the Fidelity Bank did not acquire title to the drafts, but was merely constituted an agent for their collection. Thus far there is no room for serious controversy. *First National Bank v. Reno County Bank,* 3 Fed. Rep. 261, 262; *Balbach v. Frelinghuysen,* 15 Fed. Rep. 675; *White v. Bank,* 102 U. S. 661; *Hoffman v. Bank,* 46 N. J. Law, 604; *Blaine v. Bourne,* 11 R. I. 119; *Bank v. Bank,* 76 Ind. 561; *Sweeny v. Easter,* 1 Wall. 173; *Levi v. Bank,* 5 Dill. 107; 1 Daniel, Neg. Inst. §§ 336, 337.

The contention is, however, that the practice shown of crediting sight drafts, when received for collection, as cash, and the allowance of interest on daily balances into which such credits had entered, alters the case, and that, because of that method of dealing, the drafts became the property of the Fidelity Bank as soon as a credit was given therefor upon its books, and that from that time forward the Fidelity Bank became the debtor of the Portsmouth and Staunton banks, respectively, for the sums severally credited. When checks or sight drafts are indorsed generally by the payee, and deposited with a bank, and credit is given therefor to the depositor, with his consent, as for so much cash, with the understanding, express or implied, that such credit may be drawn upon, the prevailing opinion seems to be that the relation of debtor and creditor is forthwith created between the bank and the depositor, and that the bank becomes at once the owner of the paper, and not merely an agent for its collection. An indorsement in blank, or to the order of the receiving bank, is entirely consistent with that view of the transaction. *Bank v. Loyd,* 90 N. Y. 534, and cases cited; *Railway Co. v. Johnston,* 27 Fed. Rep. 243; *Hoffman v. Bank,* 46 N. J. Law, 605.

But if paper is indorsed, "For collection for account of the depositor," and then deposited, and credit given, a different case is presented. The mere fact that paper thus indorsed is credited by a bank to the depositor as cash, and the privilege accorded to him of drawing against the .credit, may not, as it seems, be sufficient to vest the bank with title to such paper. In some cases it appears to be held that such credits are merely provisional, that is, subject to revocation, until the paper is actually collected by the receiving bank, or until the credit has been drawn against by the depositor, and that up to such time the title to the paper is in the depositor, and the bank is a mere agent of the depositor, for collection. *Bank* v. *Bank*, (Mass.) 20 N. E. Rep. 193; *Levi* v. *Bank*, 5 Dill. 107–111; *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 683; 2 Morse, Bank. §§ 583, 586.

In the opinion of the court, the true criterion, in a case such as is last stated, for determining the question of title to the paper before the same is actually collected, and before the credit has been drawn against, is whether the depositor intended to part with title, and whether the receiving bank intended to purchase the paper, and assume the risk of payment, and give an absolute credit therefor, as in cases of discount. Viewing the matter in that light, I have little difficulty in finding, in the case at bar, that the title to the two drafts, and their proceeds, remained in the Portsmouth bank and Staunton bank, respectively, up to the time the Fidelity Bank failed, and the government took possession of its assets. The indorsements placed on the drafts in question, when forwarded to the Fidelity Bank, is persuasive evidence, notwithstanding the previous course of dealing, that neither the Portsmouth bank nor Staunton bank intended to part with their title to the drafts in question, or to enable the Fidelity Bank to deal with the same as its own. It was a restrictive indorsement, and it must be assumed that that form of indorsement was adopted for a well-defined purpose. It may well be doubted whether the legal effect of that form of indorsement can be controlled or modified by proof of a usage existing to credit such items as cash, and permit the credit so given to be drawn against; it being conceded that in the present case neither of the depositors saw fit to avail themselves of such privilege. But, be that as it may, it is also apparent that the Fidelity Bank did not intend to purchase the drafts in question, and give its customers an absolute credit for the par value thereof. In its letter acknowledging the receipt of the Shelby draft, the Fidelity Bank stated that it credited the same, "subject to payment." This must be understood as meaning that the credit was merely provisional, that is, conditional on payment, and that it did not intend to assume the risk of payment, or give an absolute credit, or put itself in any other relation to the paper than that of an agent for collection. This seems to me to be the proper interpretation of the transaction, looking at it merely with a view of determining what the parties thereto intended. As the Fidelity Bank never received the proceeds of the drafts, and was not even notified of their payment prior to its failure, and as the banks that had deposited them for collection laid claim to the proceeds of the drafts, in

the hands of the subordinate collecting agent, before they had become mingled with the funds of the Fidelity Bank, I think they are entitled to recover the same as against the receiver of the Fidelity. *Hackett* v. *Reynolds*, (Pa.) 6 Atl. Rep. 689; *First National Bank* v. *Reno County Bank*, *supra.* It is so decreed.