## SPOONER *v.* BANK OF DONALSONVILLE.

1. In *Spooner* v. *Bank of Donalsonville,* 142 *Ga.* 236 (82 S. E. 625), it was held that it was error to dismiss the petition involved in the present case on general demurrer.

2. The uncontradicted. evidence showed that the deposit by the plaintiff with the defendant of the check here involved was not a sale or absolute transfer of title to the bank, but that the credit given by the bank was made subject to the payment of the check, and that it was not paid; nor were there such circumstances as authorized the plaintiff to recover as for money had and received.

(*a*) Accordingly, the plaintiff was not entitled to recover on the theory that there was a sale or absolute transfer of such check, and that the credit given to him on his account was likewise absolute.

(*b*) If the action could be construed as including an effort to recover damages against the bank because of negligence on the part of itself or its correspondent, to whom it sent the check for collection, in failing to present the same, or to notify the plaintiff promptly after its loss in the mails, there was no evidence tending to show damage resulting to the plaintiff by reason of such negligence.

(*c*) This clearly was not an action of assumpsit for breach of an express or an implied contract of an agent to collect; nor was it contended that nominal damages might be recoverable without proof of special damage.

(*d*) Under the evidence, there was no error in directing a verdict in favor of the defendant.

FEBRUARY 25, 1916.

Action for money had and received. Before Judge Thomas. Decatur superior court. November 11, 1914.

*R. G. Hartsfield,* for plaintiff. *E. M. Donalson,* for defendant.

LUMPKIN, J. Spooner brought suit against the Bank of Donalsonville. The petition was dismissed on general demurrer. On

exception this judgment was reversed.  142 *Ga.* 236.  On the trial the court directed a verdict for the defendant, and the plaintiff excepted.

Where a check on one bank, payable to order and indorsed, has been deposited in another bank, and credited to the depositor, the question of whether title passes to the bank of deposit, or remains in the depositor, as between them, has given rise to much discussion.  If the paper is distinctly indorsed "for collection," or in terms of similar import, or if there is a definite agreement at the time of the deposit that the check is deposited for collection, or, on the other hand, that it is to become the property of the bank, the case is not one of difficulty.  But, where a check on one bank, payable to order, is indorsed generally and deposited with another bank, without any definite agreement as to the way in which it is to be treated, and the depositor is credited by the bank with the amount of the check as if it were cash, the authorities are divided as to the effect of the transaction.  Some of them declare that the effect is to pass title absolutely to the bank, which becomes the debtor of the depositor, though he is liable to the bank as indorser.  Others hold that, as between the bank and the depositor, the title remains in the latter until the check is collected, although crediting it may permit the depositor to draw against the deposit.  Emphasis has been laid upon whether the deposit has actually been drawn against, or whether it has been applied to extinguish a past advance.  If there is a distinct agreement or understanding that the credit is to be provisional, and that no money can be drawn until the check has been collected, or only as a favor or temporary loan or advance, this may be determinative of the question.

While some of the authorities have announced broadly that the passing to the credit of the depositor of a check payable to order and bearing an indorsement not indicating that it is deposited for collection only, passes the title to the bank, or does not do so, there is weighty authority that this result either way is not absolute but is prima facie, and that the presumption from this fact only will yield to proof of the intention of the parties expressed or implied from the circumstances.  In some cases whether the depositor was a regular customer, and what had been the practice as to permitting him to draw checks against his deposit account, in-

cluding such deposits, have been treated as circumstances for consideration, among others. Some authorities have considered the practice of allowing customers to check against deposits so made as being a gratuitous privilege or favor. See on the general subject, as indicating the divergent views of the authorities, 2 Bolles' Mod. Law of Banking, 528, 531, and citations; 1 Id. 207; Morse on Banks and Banking (4th ed.), §§ 573-577; 2 Michie on Banks and Banking, §§ 123-1/2, 126, and citations; 1 Dan. Neg. Inst. (6th ed.), § 340c; Metropolitan National Bank v. Loyd, 90 N. Y. 530; St. Louis etc. Ry. Co. v. Johnston, 133 U. S. 566 (10 Sup. Ct. 390, 33 L. ed. 683); Burton v. United States, 196 U. S. 283 (25 Sup. Ct. 243, 49 L. ed. 482). Fayette National Bank v. Summers, 105 Va. 689 (54 S. E. 862, 7 L. R.. A. (N. S.) 694, and note). And see the decision of this court in *Fourth National Bank v. Mayer,* 89 *Ga.* 108 (3) (14 S. E. 891); *Bailie* v. *Augusta Savings Bank,* 95 *Ga.* 277 (21 S. E. 717, 51 Am. St. R. 774).

The present case does not involve a consideration of the effect of the use of certain words in an indorsement, such as "for deposit to the credit of," "for collection and deposit," or the like, or what rights are conferred on the bank thereby. See *Freeman* v. *Exchange Bank of Macon,* 87 *Ga.* 45 (13 S. E. 160), distinguished in *Fourth National Bank* v. *Mayer,* supra; Ditch v. Western National Bank, 79 Md. 192, 221 (29 Atl. 72, 138, 23 L. R. A. 164, and note, 47 Am. St. R. 375); *Cronheim* v. *Postal Telegraph-Cable Co.,* 10 *Ga. App.* 716 (74 S. E. 78), where the paper was treated as deposited "for collection and credit for deposit," though there was some general discussion in the opinion. Nor need we consider possible rights which may be acquired by third persons from a bank to which a general indorsement has been made.

When the case was here before, the ruling was that the petition was not subject to general demurrer. In so holding we did not find it necessary to go as far as some of the authorities referred to above. There were allegations, that the customer carried a deposit account in cash to his credit, subject to his check, payable upon presentation to the bank; that a check on a bank in another place, drawn by a third person and payable to the customer's order, was indorsed in blank and deposited on September 15, 1910; that the bank accepted the check so deposited and placed it as a credit on the plaintiff's deposit account, and gave

him a deposit slip, stating that his account had been credited with the amount of the check as of that date; that he afterwards drew checks in the usual course of his business against said deposit, which were paid by the bank, and that he placed other money and checks to the credit of his account, as had been his custom before and after the date mentioned; that, under his dealings as a depositor with the bank, the plaintiff had a right to draw immediately against his account credited with the deposit of the check; that on October 24 the bank charged the plaintiff's account with the amount of the check, taking that sum from him without his knowledge or consent, "and without warrant of law or authority;" that, after so doing, the bank failed and refused, though solicited so to do, to return the sum to him or to his account. By amendment it was alleged that the bank failed and refused to return to the plaintiff the check, and notified him for the first time, on October 24, that it had lost the check in the mails, or that it had been lost in the mails, and that for this reason the bank was unable to return it to the plaintiff and had on that day charged his account with the amount of the check. It was held that these allegations were good as against a general demurrer. We are now called upon to determine whether the evidence authorized the presiding judge to direct a verdict in favor of the defendant.

In regard to the right to charge back checks if not paid, in 5 Cyc. 499, it is said: "With few exceptions, all checks which are credited to depositors are entered with the express or implied right to charge them back if they are not paid. One view of this right to retransfer is that it is inconsistent with the bank's ownership of the title, even though advances be made on them. If, however, the bank divests itself of its qualified title by charging them back, it still preserves its lien for any advances actually made on them. The other view is that the right to retransfer does not affect the bank's title to the paper, every indorsee having recourse to his indorsement in the event of not receiving payment from the primary party." The author of the article in Cyc. on Banks and Banking (Mr. Albert S. Bolles), in 1 Bolles' Modern Law of Banking, 210, states that the theory that the right to charge back checks in the event of their non-collection is inconsistent with the right of ownership, is not the prevailing view; that individuals are given checks every day in payment of debts; that ordinarily

the payee can sue the maker on the check, or return it and sue on the original debt; and that the bank that has taken the check and given the depositor credit for the amount can, in like manner, charge the amount back and return the check if it is unpaid. He also suggests the view that the law of implied warranty may have a bearing on the question. In Morse on Banks and Banking (4th ed.), § 586, it is said that the right always claimed and exercised by banks of charging back such checks returned unpaid is inconsistent with the theory of an understanding that the title passes absolutely.

If a check of a third person on another bank, payable to order, is deposited under a special agreement that the bank of deposit is not to be liable until the cash has been paid to it, or that it is credited subject to payment, this negatives the idea of a sale of the paper to the bank, or of the absolute transfer of title to it. The courts of New York have long been leaders in holding that, where a depositor of a bank deposits therein commercial paper of third persons, payable to order and indorsed generally, and the bank by his direction gives him credit therefor as cash, the title to the paper passes to the bank. But in King v. Bowling Green Trust Co., 145 App. Div. 398 (129 N. Y. Supp. 977), it was held that such was not the case where the deposit slip contained a statement that, in receiving such checks, the bank assumed no responsibility for a failure of any of its collection agents, and should only be liable when the proceeds in funds or solvent credits should come into its possession, and where the depositor's pass-book stated that the bank acted only as agent in receiving such checks for collection. As to the effect of an indorsement for collection, and the making of a credit "subject to payment," see Fifth National Bank v. Armstrong, 40 Fed. 46. In the opinion of Thayer, J., it was said: "In its letter acknowledging the receipt of the Shelby draft, the Fidelity Bank stated that it credited the same, 'subject to payment.' This must be understood as meaning that the credit was merely provisional, that is, conditional on payment, and that it did not intend to assume the risk of payment, or give an absolute credit, or put itself in any other relation to the paper than that of an agent for collection." In that case the indorsement was expressly for collection; but it is cited for the reference to the effect given to the expression, "sub-

ject to payment," employed in the letter acknowledging the receipt of the draft. First National Bank *v.* Armstrong, 42 Fed. 193. In National Butchers' &c. Bank *v.* Hubbell, 117 N. Y. 384 (22 N. E. 1031, 7 L. R. A. 852, 15 Am. St. R. 515), it was held, that an indorsement for collection of a draft or check is not a transfer of the title to the indorsee, but merely constitutes him the agent of the indorser to pay the paper, demand and receive payment, and remit the proceeds; and that a different result did not follow from the fact that the indorser was credited and the indorsee charged with the amount of such draft or check, where it appeared that the indorsee did not become unconditionally responsible for such amount until the draft or check was actually paid. Here again the indorsement was expressly for collection; but the case is cited to show that there may be a provisional credit by agreement, which will not result in an absolute transfer of title. As will appear below, under the form of receipt given by the bank, it need not be held that the bank was a mere collecting agent; but there was a contract making the deposit subject to payment of the check.

In Harter *v.* Bank of Brunson, 92 S. C. 440 (75 S. E. 696), it was held, that a draft deposited on a slip containing a provision that the bank is not to be held liable until the draft is collected does not exempt the bank from liability for its negligence or that of its correspondents, who are its agents; and that where it forwards such draft promptly to its correspondents for collection, but hears nothing of it for several months, during which time the drawer becomes insolvent, the bank is liable to the depositor for the amount of the draft. In that case the draft in favor of the plaintiff was indorsed by him and deposited with the defendant bank and the amount thereof was placed to his credit on his account with the defendant. The draft was listed, with other items, on a blank form of deposit slip which was filled up and signed by the plaintiff, and upon which, over the plaintiff's signature, was printed the following stipulation: "For value received, we, the undersigned, hereby agree, in depositing the items listed below for collection or credit with the Bank of Brunson, Brunson, S. C., that we will not hold the bank liable to us for said items until the cash for each has been paid to the Bank of Brunson, Brunson, S. C." The defendant promptly forwarded the draft to the

Bank of Charleston, its regular correspondent for the collection of items payable outside of Brunson. In due course of business, the defendant should have received a report from its correspondent in about three days, but nothing was heard from the draft for over six months, when the defendant received information from its correspondent that the draft had been dishonored and protested, and that it, with notice of protest, had been mailed to the defendant. The evidence failed to show when it was presented for payment, who made the protest, or when it was deposited in the mail. The defendant never received the draft with the notice of protest, and it was supposed to have been lost in the mail. On receiving this information, more than six months after the deposit, the defendant notified the plaintiff of the dishonor, protest, and loss of the draft, and charged his account with the amount thereof, and of the protest fee. The plaintiff brought his action to recover the amount so charged to him, alleging that he had been damaged to the extent of that amount by the defendant's negligence in failing to give him notice, within a reasonable time, of the dishonor of the draft. The circuit court, on exceptions to the referee's report, held that negligence had been shown, and also injury to the plaintiff by delay in giving him notice, because the drawer was solvent when the draft was made, and if timely notice had been given to the plaintiff he could have recovered the amount, but that the drawer was insolvent when the notice was given. In the opinion (p. 444) Hydrick, J., said: "Whatever else may be the legal effect of the stipulation printed on the deposit slip, it does not purport to exempt the bank from liability for its negligence, or that of its agents; and it should not have that effect; nor can it be construed as a waiver of the rights of a depositor of commercial paper, under the law merchant, with regard to presentment, demand, and notice of dishonor. It does, however, afford evidence of an agreement that the paper so deposited was not absolutely sold to the bank, and that the credit given a customer on the deposit of such an item is not absolute, but contingent upon collection; and, therefore, if it proves to be uncollectible, notwithstanding the exercise of due and ordinary care and diligence on the part of the bank, such credit is subject to a countercharge, and the bank shall not be held liable for the failure to collect." It will be observed that the action was not

based on the ground that the bank had purchased the paper absolutely, nor was it for money had and received, but it was based on negligence on the part of the bank, and injury arising therefrom to the amount of the draft.

From the foregoing discussion it will be seen that an action based upon the ground that the bank became the purchaser of the check, took absolute title thereto and credited the amount to the depositor, which became his money, and which could not be lawfully taken from him, is not identical with an action against a bank, treated as a collecting agent and holding only a qualified title for that purpose, on account of negligence of itself or its correspondent in failing to present or collect the check; and that a credit given under an agreement that the bank shall not be held liable until the paper is collected is not absolute but contingent upon such collection.

In the case now before us the evidence for the plaintiff tended to show, among other things, as follows: The plaintiff was a general depositor with the defendant bank. He had a general understanding with the bank, by which he deposited money and checks to his credit and drew checks against his account. He had no understanding about the particular check involved in this controversy, but sent it by mail, without instructions, to the bank on September 15, 1910. On October 24 he received a letter from the cashier of the defendant, informing him that it had heard nothing from him in regard to the check, which it had notified him several days previously had been lost in the mails, and that the bank was that day charging his account with the amount of the check "until you obtain duplicate check for the amount, which you can send in for recredit." Upon receipt of this letter he went to the bank and discussed the matter with the cashier, claiming that he should have credit for the money, while the cashier claimed that the bank was not responsible, as the check was lost. He did not tell the plaintiff who lost it, and gave him little satisfaction. He did not say what he was going to do about the money, but that he would write to the drawer of the check in regard to it and see what he would do about giving a duplicate, "or hunt up the check." He said he would undertake to get a duplicate. The plaintiff never received the check or a duplicate, and has never seen the drawer since that time. The bank did

not notify the plaintiff whether or not the check was presented to the drawee bank for collection, but only that it was lost, and never notified him that the check had been protested for non-payment. The plaintiff's deposit account was introduced, showing an entry of a credit of $485 on Sept. 15, 1910; also showing other amounts deposited to his credit, and checks against his account, and that, after the $485 was charged back, a balance of $75 remained.

The cashier of the defendant testified, among other things, as follows: Upon receipt of the check by mail he made out a deposit slip, showing its deposit. This slip was as follows:

"Donalsonville, Ga., 9-15, 1910. For value received, we, the undersigned, hereby agree, in depositing items listed below for collection or credit with the Bank of Donalsonville, that we will not hold said bank liable to us for said items until the cash for each has been paid to Bank of Donalsonville, Donalsonville, Ga.

J. G. Spooner.

"List each check separately.

"Checks, etc., $485.00.

"Please see that all checks are endorsed."

The testimony of the cashier continued in substance as follows: All of the deposit slips ever used by the bank had the same conditions printed on them. The plaintiff had been doing business with it for about four years, and with each deposit had been presented with a slip containing those conditions, and had seen them. The check was immediately forwarded for collection to the correspondent of the bank in Savannah. The bank had an account with its Savannah correspondent, and deposited the check with the latter under the same conditions as those upon which it was deposited with the defendant. The Savannah bank credited the check to the defendant, and forwarded it for payment, but it was lost in the mail, and was never returned to the defendant, nor by it to the plaintiff. It was the duty of the Savannah bank to send the check to Augusta, where the drawee bank was located, for payment immediately about the 17th of September, and in due course of banking it should have arrived there not later than the 20th, and the Savannah bank should have known in eight or ten days later whether the check had been presented or lost. If lost, the Savannah bank should have notified the defendant, and it

48

would then have been the duty of the defendant to have notified the plaintiff. The loss was ascertained by the defendant about twenty-five days after the deposit was made. Ordinarily the defendant should have heard from the check a few days earlier than it did hear.

On the subject of notice and of whether the deposit slip was received by the plaintiff, the evidence was somewhat confused. It was stated in the bill of exceptions that the defendant introduced in evidence a deposit slip, "produced by the plaintiff under a notice to produce and made at the time of the deposit. of the check in question by the officers of the bank, which the court allowed to go in with the statement that it was never given to the plaintiff, but retained at the bank, unless the defendant showed that a copy of it or duplicate was mailed to the plaintiff, which he had been called upon to produce." It is not quite clear what this means, or how the plaintiff could produce a deposit slip if he did not have it. The cashier first testified that he mailed to the plaintiff a duplicate of this slip, and later that he did not do so, but on the day of the deposit mailed to him a card dated September 15, 1910, and containing the following: "Your favor of the ————received with stated enclosures. We credit your account $485.00. We enter for collection————We charge your account and return————All items sent to us are credited subject to payment." This card was produced by the plaintiff under a notice to produce the deposit slip acknowledging the receipt of the check in question. He had alleged in his petition that the defendant gave him a deposit slip.

From the uncontradicted evidence it thus appears that the bank used only one form of deposit slip, which contained the provision set out above, and that the plaintiff was familiar with the fact, having been a depositor for several years. It also appeared, without contradiction, that the deposit of the check was entered on a slip of that character, made out by the cashier, and that he mailed to the plaintiff either a duplicate of such slip, or a card acknowledging the receipt of the check, and stating that the amount of it had been credited to the plaintiff's account, and that on this card was the statement that "All items sent to us are credited subject to payment." This shows beyond controversy that the check was not sold to the bank unconditionally, and that the

credit was not absolute, but contingent upon payment. Under the prepared form on the card, showing deposits generally and those for collection separately, with an entry of this credit under the former head, we need not hold that the bank was a mere collecting agent. Certainly, however, the credit was not absolute, but was contingent upon payment of the check, and there was no collection, and (as will appear later) nothing was received which could be treated as money. Accordingly, the plaintiff was not entitled to recover on the theory of a sale of the check to it. He did not allege negligence in failing to present or collect the check or to notify him, or damage resulting therefrom.

It has been said that the liability of a bank negligently failing to collect paper received for that purpose may be enforced by an action of assumpsit for breach of its implied undertaking to use diligence in making the collection, or by an action of case for damages resulting from negligence in the performance of its duties imposed by law; and that in some cases, where the bank has received money, or something which, under the circumstances, ought as between the parties to be regarded as money, an action would lie for money had and received. 2 Michie on Banks and Banking, § 175; Pinkney v. Kanawah Valley Bank, 68 W. Va. 254 (69 S. E. 1012, 32 L. R. A. (N. S.) 987, Ann. Cas. 1912B, 115); 2 Greenleaf on Ev. § 118. See also, in this connection, Jefferson County Savings Bank v. Hendrix, 147 Ala. 670 (39 So. 295, 1 L. R. A. (N. S.) 246).

In the case now before us, as we have held that the credit given by the bank to the plaintiff was not absolute but contingent, the loss of the check in the mails before presentation and the delay of some days, perhaps of several weeks, in notifying the plaintiff of the loss, nothing else appearing as to whether there were funds in the drawee bank to meet the check if presented, or as to any change in its condition or that of the drawer, or to show other circumstances of like effect, will not alone suffice to authorize a recovery as for money had and received. The facts involved in the West Virginia case above cited are quite different in this respect from those here involved. Whether the result would have been different had the check been indorsed, and credited generally and not subject to its payment, need not be decided.

In Stein v. Empire Trust Co., 148 App. Div. 850 (133 N. Y.

Supp. 517), a check was delivered to a bank for collection, and credit was given to the depositor for the amount thereof, less ten cents, but subsequently the indorsement of the payee, who was not the depositor, was discovered to be a forgery, and the bank charged back the amount of the check against the depositor. He brought suit, alleging that the check came into his possession for a valuable consideration; that, after indorsement, he deposited it with the defendant for collection; and that thereafter the defendant collected the amount of it, but refused to pay the amount to him. It was held that the burden of proof was on the plaintiff to show that the bank collected the amount of the check, or that a collection was defeated through its neglect.

In an action on the case against a negligent agent, the general rule is that both negligence and injury must be shown. We need not enter upon a discussion as to what is sufficient to make out a prima facie case of damages, or how far it is necessary to show a probability or certainty that the collection would have been made but for the negligence of the bank, in order to shift the burden of proof; or whether, if there be evidence tending to show loss, the face of the paper will furnish prima facie evidence of the amount of the damage. On this subject see note to Jefferson County Savings Bank v. Hendrix (supra), 1 L. R. A. (N. S.) 246, citing and discussing Allen v. Suydam, 20 Wend. 321 (32 Am. D. 555), and a number of other. cases and text-books; Sahlien v. Bank, 90 Tenn. 221 (16 S. W. 373); Second National Bank of Baltimore v. Bank of Alma, 99 Ark. 386 (138 S. W. 172). In some cases it has been said that the measure of damages which the holder of a bill, note, or the like is entitled to recover from a bank or other collecting agent which has been guilty of default in respect to it, is the actual loss which has been suffered; and that this is prima facie the amount of the bill or note placed in its hands. But in most of such cases an examination of the facts will show that there was some evidence that with diligence there was a reasonable probability of collection, or that by reason of the conduct of the bank there was a discharge of an indorser or drawer, or some financial failure of the drawer of a check or of the drawee bank after negligence in omitting due presentation, or some like facts; and the general statements must be considered in connection with the facts involved. See, in this connection, Borup

*v.* Nininger, 5 Minn. 523, 549; Dern *v.* Kellogg, 54 Neb. 560 (74 N. W. 844); First. National Bank of Meadville *v.* Fourth National Bank of New York, 77 N. Y. 320, 329, 330 (33 Am. R. 618). No case has come to our notice of the loss in the mails of a check payable to the depositor where it has been held that this alone showed even a prima facie case for the recovery of the full amount thereof.

If the present case, therefore, should be treated as including an action for damages for negligence on the part of the defendant bank in the discharge of its duties as a collecting agent, there was evidence tending to show negligence on the part of itself or its correspondent in Savannah; and in this State the original bank is liable for damages arising from the negligence of its correspondent to whom it sends a paper for collection. *Bailie* v. *Augusta Savings Bank,* 95 *Ga.* 277. (supra); Civil Code (1910), § 2362. But there was no evidence tending to show any damage arising from such negligence. It did not appear that the drawer of the check had funds in the bank with which to meet it at the time when it was drawn, or that the drawee bank failed, or that the drawer became insolvent, or any other circumstance showing loss to the plaintiff arising from the negligence of the defendant or its correspondent in handling the check or in failing to promptly notify the plaintiff of its loss. There is no claim that this is a suit in assumpsit for breach of an express or implied contract by the bank to act as a collecting agent. Nor is any contention made that the plaintiff might be entitled to proceed for nominal damages. Under the pleadings and evidence and contentions of the parties, the judgment will not be reversed on that ground.

*Judgment affirmed. All the Justices concur.*