## FIRST DISTRICT, DECEMBER, 1892.

### T. M. CAMPBELL, RECEIVER, v. ED. B. WIGGINS, TAX COLLECTOR.

### No. 171.

1. **Taxation of Money of the International & Great Northern Railway Company.**—Money earned by the International & Great Northern Railway, after the consolidation of the International with the Houston & Great Northern Railway Company, was deposited in bank, and assessed for taxes, and levy made to enforce the collection of the taxes thus assessed. The receiver having enjoined, and in his petition alleged that all the money (for the taxes assessed against which the levy was made) was earned by the International & Great Northern Railway Company, and not by virtue of the charter of the Great Northern Railway, or the Houston & Great Northern Railway Company, it is *held*, that such money is not exempted from taxation under the compromise Act of the Legislature of March 10, 1875, which by its terms specified the exemptions from taxation granted to the consolidated company.

2. **Construction of the Compromise Act of March 10, 1875.**—This act recognizes the consolidation of the International Railway Company with the Houston & Great Northern, and does not in any manner interfere with the charter of the latter road, but a clear distinction is made and observed between the two roads, and the ownership by the consolidated road of its property is recognized by the Legislature to be derived from the two sources.

3. **Same—The Tax Exemption.**—The exemption of the consolidated road and its successors, and "its capital stock, rights, franchises, etc.," does not give any greater scope to the exemption than as to the property enumerated as exempt, for if such were the purpose, it would be useless to enumerate the property that was exempted. In order to leave no doubt as to what property should be exempted, the law, after expressing as plainly as it could that it was to be only such property as the new company was entitled to by reason of its acquisition of the charter, rights, and privileges of the International Company, expressly provides that the exemption should not apply to the lands of the Houston & Great Northern Railway, or to the franchise, road bed, rolling stock, or any property acquired or to be acquired by virtue of the charter of that company.

4. **Money as Property under said Act.**—Money is property subject to taxation, but whether the word "property" as used in the Act of March 10, 1875, includes the money of the road or not, need not be decided, as appellant alleges that all the money on which this tax was levied was earned by the consolidated road, and it is not shown that the money, or a part of it, was not earned by the operations of the roads consolidated with the International.

5. **Injunction — Holding over Case for Trial on Merits.**—If the petition failed to disclose a good cause of action, defendant's exceptions were rightfully sustained; and the plaintiff having declined to amend, the proper practice

was to render judgment for the defendant, dismissing plaintiff's case. The fact that the plaintiff's petition was sworn to gives no aid to the legal sufficiency of its allegations.

6. **Deposit not Liable to setoff by Liabilities of Tax Payer.**—The receiver claimed that the amount of the assessment was not in the hands of their bankers in actual cash when the assessment was made, and that they were entitled to offset their liabilities against it. Although a deposit subject to sight check is usually held to be nothing more than a debt against the bank, it is regarded by the tax law of this State as cash, and as such is not subject to be offset by the liabilities of the tax payer.

7. **Same—Bankers' Cash in Vault.**—Proof that the bankers with whom the receiver had his deposit account did not have as much money on hand in their vaults as the amount of the deposit which was taxed, does not disprove that the tax payer has money on hand subject to taxation. The statute (Revised Statutes, article 4672) defines money as including "every deposit which any person owning the same, or holding in trust, and residing in this State, is entitled to withdraw in money on demand."

APPEAL from Smith. Tried below before Hon. Felix J. McCord.

*J. M. Duncan* and *G. H. Gould*, for appellant.—1. The court erred in dissolving the injunction, because, under the special statutes set out in full in plaintiff's trial amendment, the property or money upon which their tax is levied is exempt from taxation. Spec. Acts 14th Leg., 2d sess., pp. 69–73, and Act Aug. 5, 1870; Railway v. Anderson County, 59 Texas, 654; Railway v. Smith County, 65 Texas, 21; Worth v. Railway, 13 Am. and Eng. Ry. Cases, 286, and authorities.

2. A charter exemption is a contract with the State which can not be affected by subsequent legislation or by the appointment of a receiver, as the exemption attaches to the property and follows it. Railway v. The State, 75 Texas, 356; Turner v. Cross, 18 S. W. Rep., 578; Railway v. Taylor, 8 So. Rep., 675.

3. If a petition for an injunction shows a good cause of action, the case should be heard on its merits, even if the temporary injunction has been dissolved. Love v. Powell, 67 Texas, 15; Roe v. Dailey, 1 N. C., 247.

*James M. Edwards*, for appellee.—1. The moneys assessed for taxation were not exempt therefrom by reason of the special statutes pleaded by appellant. Act Aug. 5, 1870; Act March 10, 1875; Anderson County case, 59 Texas, 654; Smith County case, 65 Texas, 21; Anderson County v. Kennedy, 58 Texas, 616; Bank v. Tennessee, 104 U. S., 493, and cases cited; Hoge v. Railway, 99 U. S., 348; Swigert's case, 119 Ill., 83; Cool. on Tax., 144–146; Railway v. Burlington, 28 Vt., 193; The State v. Mansfield, 3 Zab., 510; Railway v. Hancock, 33 N. J. L., 315; The State v. Railway, 38 N. W. Rep., 635; 97 Otto, 697.

2. Taxation being the rule, and exemption therefrom being the ex-

ception, all laws exempting property from taxation will be strictly construed by the courts when called upon to enforce them, and nothing will be held to come within the exemption which does not clearly come within the terms thereof; and all reasonable intendments will be indulged in favor of the power to tax. Swigert's case, 119 Ill., 83; Bank v. Tennessee, 104 U. S., 493; Hoge v. Railway, 99 U. S., 348–355; Cool. on Tax., 144–146; Anderson County v. Kennedy, 58 Texas, 616; Bank v. Billings, 4 Pet., 561; Railway v. Berry, 41 Ark., 509; Suth. on Stat. Con., sec. 364 and cases cited.

3. The money not exempt from taxation by reason of having arisen from the operation of the railway by receivers, and having been deposited under an order of court, and the collector properly levied upon property in the hands of receivers to collect the tax. Rev. Stats., arts. 4746, 4746a, 4675 (sec. 7), 4680; Trust Co. v. Railway, 26 Fed. Rep., 11; Gluck & Becker on Receivers, sec. 79; Trust Co. v. Railway, 110 N. Y., 250; Railway v. Commonwealth, 104 Pa. St., 80.

4. The money, though merely a deposit, the actual money being elsewhere, is taxable in county where the deposit is situated on January 1. Rev. Stats., arts. 4669, 4671, 4672, 4675 (sec. 2), 4676, 4688, 4692 (secs. 6, 7), 4712a; Cattle Co. v. Faught, 69 Texas, 402; Cool. on Tax., 270; Railway v. Commissioners, 7 Am. and Eng. Ry. Cases, 342, 343.

5. Plaintiff is estopped from disputing the amount of assessment. Rev. Stats., 4686, 4692 (secs. 2, 5), 4714, 4715; 54 Texas, 1, 119; 56 Texas, 486; Cool. on Tax., 258–264, 527–530; Gluck & Becker on Receivers, sec. 53; 117 U. S., 434; 99 Am. Dec., 577; 75 Ill., 292; 76 Texas, 365.

GARRETT, CHIEF JUSTICE.—Action by T. M. Campbell, as receiver of the International & Great Northern Railway, brought in the District Court of Smith County, to enjoin appellee, as collector of taxes of said county, from collecting certain taxes assessed against said railway on money in the hands of appellant as receiver for the years 1890 and 1891, and to enjoin the sale of certain property which had been levied on by said collector therefor. A temporary injunction was granted by the judge in chambers. On trial of the cause, March 17, 1892, the court sustained general and special demurrers to the petition and trial amendment; and plaintiff having declined to further amend, the cause was dismissed at his cost, and as receiver he was ordered to pay the taxes sought to be enjoined.

The seizure of the property was made on February 4, 1892, and plaintiff at once applied to the court, by a petition filed in the cause No. 3123, Jay Gould v. The International & Great Northern Railway Company, and obtained a temporary restraining order for five days until he could prepare an original petition for injunction. This order was granted by the judge, and this suit for injunction was then instituted.

Plaintiff's first amended original petition, filed March 15, 1892, and his trial amendment filed March 16, 1892, show his cause of action substantially as follows:

That plaintiff was the duly appointed and acting receiver of the International & Great Northern Railway in a suit of Jay Gould v. The International & Great Northern Railway Company, No. 3123, and as such receiver was, and had been for more than six months past, in possession of and operating the International & Great Northern Railway, together with all its property; that defendant, Ed. B. Wiggins, was the tax collector of Smith County; that on February 4, 1892, said tax collector, under the provisions of article 4746, Revised Statutes of Texas, levied on, seized, and took into his possession, and from the possession of plaintiff as receiver, certain cars, fully described by number and character, and certain real estate, also fully described; all of said property being the property of the International & Great Northern Railway Company, in the hands of plaintiff as receiver.

It was averred, that the cars were situated upon the main line and track of the company in the city of Tyler, and were necessary to the operation of said railroad; that by the levy the main line and switches were blocked, and the traffic upon the main line of said railway through the city of Tyler was impeded and materially interfered with.

Plaintiff averred, that on February 4, 1892, the court had granted a temporary injunction, to continue in force no longer than five days, provided that plaintiff did not file within said time an original suit by injunction for a temporary and permanent injunction to restrain the defendant. The plaintiff feared that said property, or other property in his hands, would again be seized and was threatened with seizure by the defendant; and he charged that said levy and impending seizure would work irreparable injury to him as receiver, and to the property in his hands, by in a measure suspending and blocking the traffic upon said road and rendering him liable to shippers for delays, for failure to furnish cars, and in receiving and forwarding shipments, and by clouding and complicating the title to said real estate by a sale for taxes.

It was alleged, that said seizure was made for the purpose of satisfying certain assessments made by the tax assessor of Smith County for State and county taxes upon the property of the International & Great Northern Railway Company, on account of certain supposed deposits with the bank of Bonner & Bonner, in Tyler, Smith County, Texas, assessed as " money on hand;" that said assessments were on the sum of $402,598.90 for the year 1890, and on the sum of $274,485.41 for the year 1891; and the taxes for which the seizure was made amounted for the year 1890 to the sum of $3925.33, and for the year 1891 to the sum of $2584.48.

Plaintiff alleged, that all of the money on which the tax was levied was money earned by the International & Great Northern Railway, and not

acquired by virtue of the charter of the Great Northern Railway Company or the Houston & Great Northern Railway Company, and was therefore exempt from taxation under the special act of the Legislature of Texas, approved March 10, 1875, the whole of which act he set out in his trial amendment, as well as the act of the Legislature incorporating the International Railway Company, passed August 5, 1870.

Plaintiff further alleged, that he was informed and believed, and so charged, that the receivers of the International & Great Northern Railway had no such amount of funds in the hands of said bank at the dates mentioned, nor indeed any amount above the liabilities of the receivers to other roads and individuals on account of debts and freight balances due on account of exchange of freight with other roads. That all of the funds arising from the operation of the railway were deposited by the receivers with said bank pursuant to the order of the District Court of Smith County, and all freight balances and dues to other lines and individuals were paid therefrom; that in fact a very large percentage of the funds so deposited was not the property of the receivers, but belonged to other lines.

Plaintiff attached to his petition as an exhibit a copy of a protest filed for plaintiff by his cashier with the Commissioners Court of Smith County, sitting as a board of equalization, on July 23, 1891, which he alleged was a true and correct statement of the condition of said deposit; and that on August 6, 1891, the said board of equalization fixed the assessments at the amounts as before alleged.

Said statement showed the amount of the deposit with Bonner & Bonner to be on January 1, 1890, $604,990.54. It showed liabilities of the receivers of that date, which were claimed as deductions:

| | | |
|---|---:|---:|
| (1) Cash collections for other railways, on account of freight, tickets, and car service in transit. | $152,391 | 64 |
| (2) Rent on Colorado River bridge | 15,500 | 00 |
| (3) Lease of Galveston, Houston & Henderson Railway | 25,850 | 00 |
| (4) Cash on Jay Gould judgment, actually paid, but not credited in books for want of voucher | 50,000 | 00 |
| (5) Pay rolls and pay checks | 142,982 | 83 |
| Vouchers for supplies and salaries of officers | 281,741 | 79 |
| Total | $668,466 | 26 |
| | 604,990 | 54 |
| Balance | $63,476 | 72 |

It also showed credits due the International & Great Northern Railway from other roads on account of freight, tickets, and car services on January 1, 1890, $403,785.16.

There was also a similar statement made by exhibit for January 1, 1891.

That there was a memorandum made on each assessment as fixed by the board, signed by W. S. Herndon as " general solicitor for the receivers," as follows:  " This assessment agreed to by the receivers of the International & Great Northern Railway, August 6, 1891."   That at the time of the signing of said memoranda, plaintiff was one of the receivers of said railway jointly with T. R. Bonner, and that the said W. S. Herndon had not the power and authority, without the knowledge and consent of plaintiff, to enter into, in the name of the receivers, any such contract or agreement, and that the same was made without the knowledge or consent of plaintiff, and was not binding on plaintiff or the property which he represented.

He further charged, that although the books of Bonner & Bonner showed that on January 1, 1890, and on January 1, 1891, the receivers had large sums of money on deposit, yet in truth the said bank had in its vaults or in its possession on January 1, 1890, from all sources, in money, only the sum of $59,557.85, and on January 1, 1891, in money, only the sum of $38,722.77; that of the money on hand in said bank on January 1, 1890, $54,569.85 consisted of the United States nontaxable notes, and of the amount on hand January 1, 1891, $31,722.77 consisted of United States nontaxable notes, leaving the amount of taxable moneys on hand in said bank on January 1, 1890, from all sources, $4988, and the amount of taxable moneys on hand from all sources on January 1, 1891, the sum of $7000, which sums were assessed against Bonner & Bonner, as shown by the assessment rolls; and if the said receivers had any balance in their favor on deposit account with Bonner & Bonner on said respective dates, the same was merely a debt or credit with them, not liable to assessment in the county of Smith, but, if at all, in the county of Anderson, where it was alleged the principal office and domicile of the International & Great Northern Railway Company and of the receivers were; and which credits could only be assessed as to such sum as should appear as a balance, after deducting all liabilities as before set out.

Wherefore, it was alleged the said assessment and the attempted collection of taxes was without authority of law and wholly void; and plaintiff prayed for an injunction restraining defendant and his successors in office from further interfering with the property of the International & Great Northern Railway Company in the hands of plaintiff as receiver on account of taxes, and commanding him to desist from further levies, and to release the property levied on and to restore it to the possession of plaintiff.

Defendant excepted to the petition, that it was wholly insufficient to entitle the plaintiff to the relief for which he prayed.   He also addressed special exceptions to the sufficiency of the petition, and his general demurrer and special exceptions sufficiently presented the questions raised.

The principal question in the case is presented by the appellant's first assignment of error, as follows: "The court erred in dissolving the injunction, because, under the special statutes set out in full in plaintiff's trial amendment, the property or money upon which their tax is levied is exempt from taxation."

The incorporation of the International Railway Company by the Legislature of the State of Texas, by the Act of August 5, 1870, and the granting to that company of bonds of the State amounting to $10,000 a mile, and an exemption of its property from taxation for five years, as well as the Compromise Act of March 10, 1875, by which lands were substituted in place of the bonds, and an exemption of the property of the company from taxation for twenty-five years was made, is familiar history in the legislation of this State. By the Act of August 5, 1870, which was the charter of said company, the route over which the line of railway was to be constructed was designated; the usual charter powers and provisions were conferred and made; the bonds were granted, and the property of the company was exempted from taxation. Afterward the International Railway Company was consolidated with the Houston & Great Northern Railway Company. When the controversy about the bonds of the State to the International Railway was settled by the Compromise Act of 1875, the consolidation of the two companies had already taken place, and was recognized by said act.

The act was entitled "An act for the relief of the International Railroad Company, now consolidated with the Houston & Great Northern Railroad Company, under the name of the International & Great Northern Railroad Company." The preamble to said act recited the act of incorporation of the International Railway Company; the grant of the bonds of the State to said company by said act; that about two hundred miles of said railway had been constructed; and that said company had been consolidated with the Houston & Great Northern Railway Company. It also referred to the questions that had arisen as to the legal liability of the State to deliver said bonds, and declared the purpose of the act to be that "these questions should be definitely settled by a just and reasonable compromise." Section 1 of the act is as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas, that in full settlement of and satisfaction of all claims of the said The International Railroad Company and of the said The International & Great Northern Railroad Company against the State for bonds under the provisions of the ninth section of the aforesaid Act of August 5, A. D. 1870, there is hereby granted to the said last named company, its successors and assigns, twenty sections, of 640 acres each, of the unappropriated public lands of the State, for each mile of railroad which has been and which may hereafter be constructed pursuant to the authority conferred by the said Act of August 5, A. D. 1870. And the said company, its

successors and assigns, shall have the right to locate said lands as headright certificates were formerly located, without being under obligations to locate alternate sections for the State; and the said lands, and the certificates issued therefor, are hereby exempted and released from all state, county, town, city, municipal, and other taxes for the period of twenty-five years from the date of the respective certificates issued therefor. And the said railroad company, and its successors, and its and their capital stock, rights, franchises, railroads, constructed and to be constructed pursuant to the Act of August 5, A. D. 1870, and this act, rolling stock, and all other property which now is or hereafter may be owned or possessed by said company or its successors in virtue of the said Act of August 5, A. D. 1870, is hereby exempted and released from all state, county, town, city, municipal, and other taxes for a period of twenty-five years from the 5th day of August, A. D. 1875, except county and municipal taxes in such counties, cities, and towns as have donated their bonds to aid in the construction of said railroad; but this exception shall not remain in force in favor of any county, city, or town which, having thus donated bonds, shall make default in the payment of either the interest or principal thereof: *Provided*, that this exemption from taxation shall not be construed to include or apply to the lands or railroads which at the time of the consolidation herein before recited belonged to the Houston & Great Northern Railroad Company, or which has since been or hereafter may be constructed or acquired under its charter: *Provided*, nothing in this act contained shall be so construed as to exempt from taxation any lands to which the company may be entitled by virtue of the charter of the Great Northern Railroad Company, or the franchise, roadbed, rolling stock, or any property acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railroad Company; and the lands granted by this act shall not be sold to any other corporation, or to any person in trust for the use or benefit of said company: *And provided further*, that the State shall not be liable for any deficiency of the unappropriated public domain on which to locate said land certificates, nor shall any of such unlocated certificates ever constitute a claim against the State."

Section 2 provides for the issue of the land certificates by the Commissioner of the General Land Office for twenty sections " for each mile of railway which has been heretofore constructed pursuant to the aforesaid Act of August 5, A. D. 1870." Section 3 provides for the inspection of the railway in sections of ten miles constructed " as authorized by the said Act of August 5, A. D. 1870." Section 7 provides for the acceptance of the provisions of the act by the stockholders of the International & Great Northern Railway Company, and upon such acceptance, that after compliance therewith by the State, the said act " shall be and constitute a full, final, and conclusive settlement of all the claims and demands of said company against the State for bonds under ninth section

of the said Act of August 5, A. D. 1870; and this act shall also be held to constitute an irrepealable contract and agreement between the State and the said company, its successors and assigns.''

The consolidation of the International Railway Company with the Houston & Great Northern was authorized by section 14 of the Act of August 5, A. D. 1870, incorporating the International Railway Company, is recognized in the compromise act, and the benefits of the act are extended to the consolidated International & Great Northern Railway Company as to all rights and property acquired under the charter of the International Railway Company. It must be observed that the compromise act does not in any manner interfere with the charter of the Houston & Great Northern Railway Company, and only '' such parts of the said Act of August 5, A. D. 1870, entitled 'An act to incorporate the International Railway Company, and to provide for the aid of the State of Texas in constructing the same,' and all other laws inconsistent with the provisions of this act are hereby repealed.''

A clear distinction is made and observed between the two railways which were originally chartered by the Legislature, and the ownership of the consolidated company of its railway property is recognized by the Legislature as derived from two sources, namely, that '' which now is or hereafter may be owned or possessed by said company [International & Great Northern Railway Company] or its successors in virtue of the said Act of August 5, A. D. 1870;'' and the lands and railways '' which at the time of the consolidation herein before recited belonged to the Houston & Great Northern Railway Company, or which has since been or hereafter may be constructed or acquired under its charter;'' also lands, franchise, roadbed, rolling stock, or any property '' acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railway Company.''

The original act of incorporation of the International Railway Company exempts from the payment of all taxes '' the capital stock and property of said company;'' while the compromise act, after exempting from taxation the lands granted in lieu of the bonds, makes the following exemption: ''And the said railway company and its successors, and its and their capital stock, rights, franchises, railways, constructed and to be constructed pursuant to the said Act of August 5, A. D. 1870, and this act, rolling stock, and all other property which now is or hereafter may be owned or possessed by said company or its successors in virtue of said Act of August 5, A. D. 1870, is hereby exempted and released from all state, county, town, city, municipal, and other taxes for a period of twenty-five years, from the 5th day of August, A. D. 1875.''

The exemption of '' said railway company and its successors,'' and '' its and their capital stock,'' etc., does not give any greater scope to the exemption than as to the property enumerated, for if such were the purpose

it would be useless to enumerate the property that was to be exempted; and the property enumerated was such as belonged to the International & Great Northern Railway Company, acquired from the International Railway Company by reason of the consolidation of the two companies, which included the railway constructed or to be constructed pursuant to the charter of 1870 and the Compromise Act of 1875, as well as all other property then owned or possessed by the International Railway Company, or that might thereafter be owned or possessed by said company or its successors in virtue of the charter of International Railway Company.

In order to leave no doubt as to what property should be exempted, the law, after expressing as plainly as it could, that it was to be only such property as the new company was entitled to by reason of its acquisition of the charter rights and privileges of the International Company, makes two provisos, in which it is expressly stated, first, that the exemption should not apply to the lands or railways which at the time of the consolidation belonged to the Houston & Great Northern Railway Company, or that might since have been or might afterward be constructed or acquired by its charter; and second, after repeating that the lands to which the Great Northern Railway Company might be entitled should not be exempt, the law stated also that nothing in the act contained should be so construed as to exempt from taxation the franchise, roadbed, rolling stock, or any property acquired or thereafter to be acquired by virtue of the charter of said company. This was as it should be. The act was for the relief of the International Railway Company, and in view of the consolidation such relief should have been, and was, granted only so far as the right thereto existed under the charter of 1870 incorporating the International Railway Company.

While the Legislature and the International & Great Northern Railway Company, as the successor of the International Railway Company, may have made the consideration for the release of the State from its obligation to issue its bonds manifest in some other manner, as by the exemption of all the property of the consolidated company, still the design is apparent to make it applicable as nearly as possible to the rights of the International Railway Company as they existed under its charter, and restrict the grant of lands to such railway as should be built along the route designated in the charter, and the exemption from taxation to the property the acquisition of which might be traced to the exercise of the franchise granted thereby. This was well expressed in the discussion of this act in the case of the International & Great Northern Railway Company v. Anderson County, 59 Texas, 661, by Judge Stayton, in delivering the opinion of the court, in the following language:

" The act further evidences that the exemption from taxation of property belonging to the consolidated company was to be restricted narrowly and closely to such property as it held or might hold under the charter

originally granted to the International Railway Company, and that the benefits otherwise to the consolidated company should be for and on account of acts which the International Railway Company had already performed under its charter, or such as the consolidated company might perform after the date of the act under that charter or the act now in consideration.''

The assessment in this case was against money deposited by the receivers of the International & Great Northern Railway with Bonner & Bonner, bankers, in the city of Tyler.

Money is property in a legal sense. At the time of the passage of the Compromise Act and now, the laws of this State, in providing for the rendition of property for taxes, mention money as property subject to taxation. 2 Pasch. Dig., art. 7713; Rev. Stats., arts. 4671, 4710.

But the appellee has invoked for the construction of the word '' property,'' as used in the act, the rule of noscitur a sociis, and contends that the meaning of the word in this instance must be ascertained by reference to the kind of property that is exempted in terms, and that the word as used in the act can apply only to property of a like character to that which is exempted by name, and that money is not exempted from taxation by a proper construction of the act.

We do not deem it necessary, however, to determine whether we may resort to this construction in this instance or not, for the appellant has not by the allegations in his petition brought the property upon which the tax has been assessed within the exemption. His allegation is, '' that all the money on which this tax is levied was money earned by the International & Great Northern Railway, and not acquired by virtue of the charter of the Great Northern Railway Company, or the Houston & Great Northern Railway Company, and is therefore exempt from taxation under said special act,'' which he sets out in full.

This allegation may be very true; the money may have been earned by the operation of the International & Great Northern Railway of all its lines as a system, and not acquired by virtue of the charter of the Great Northern Railway Company, or the Houston & Great Northern Railway Company, and still not be exempt.

It is not shown that the money, or a part of it, was not earned by the operation of the line of railway constructed in accordance with the charter of the Houston & Great Northern Railway Company, or the Great Northern Railway Company, by the International & Great Northern Railway Company. Such being the case, it is not necessary for us to decide whether or not the term '' property,'' as used in the act, would include *money*, and so exempt the deposits assessed for taxation. Nor is it necessary to consider whether or not the exemption from taxation applies only to property peculiar and necessary or convenient to the construction and operation of the railway constructed and to be constructed by virtue

of the charter of the International Railway over the route designated in that charter; and upon this point the court expresses no opinion.

Appellant's second assignment of error is as follows: "The court erred in dismissing the plaintiff's petition, but should have held it over for a hearing on the merits, because said petition was sworn to, and showed that plaintiff was not liable for near all the taxes claimed by defendant and stated in the judgment, but for a much less amount only, if said property was not protected by said special exemption law; and defendant's answer not being sworn to, the court should have heard proof of the amount of taxes actually due, as that was an issue made in the cause by the pleadings."

If the plaintiff's petition failed to disclose a good cause of action, there was no error in sustaining the defendant's exceptions thereto. In such event, the plaintiff having declined to amend, the proper practice would be to render judgment for the defendant, dismissing the plaintiff's cause, as was done by the court. Such would be a trial on the merits.

As we have already held that the petition did not allege facts sufficient to show that the money was exempt from taxation, the suit was properly dismissed, unless the court erred in some other respect as to the sufficiency of the facts to show a cause of action. The fact that the petition was sworn to will not be claimed to give aid to the legal sufficiency of the allegations, if it should appear from the facts stated that plaintiff would not be entitled to have the valuation of the property reduced below the assessment as made. A demurrer would reach such defects in allegations, although there might not be a sworn answer denying the facts.

Appellant contends that the assessment should be reduced, because, first, the deposit was subject to setoff by the liabilities of the receivers; and in the second place, because the amount of the assessment was not in the hands of Bonner & Bonner in actual cash, although the deposit account showed more than that amount to the credit of the receivers. Facts were also stated showing that the Commissioners Court, sitting as a board of equalization, had fixed the amount of the assessment. Although a deposit subject to the sight check of the depositor is usually held to be nothing more than a debt against the bank, still it is regarded by the law of this State providing for the rendition of property for taxation as cash, and as such it is not subject to be offset by the liabilities of the tax payer Rev. Stats., arts. 4672, 4692 (6).

This can not be disproved by showing that as a matter of fact the bank did not have so much money in its vaults at the time, because sufficient funds of the bank may be on deposit in other banks to meet its draft for the entire amount, and under well known banking rules, a percentage of the deposits are usually loaned to customers; still, whenever the sight check of the depositor is presented, it must be paid, and in ordinary business affairs such deposits are treated as money; and the statute defines

money as including "every deposit which any person owning the same or holding in trust, and residing in this State, is entitled to withdraw in money on demand." Taking the statement as furnished by the plaintiff, it would seem that the board of equalization had allowed greater deductions than he was legally entitled to

As it was not necessary for the defendant to furnish proof of the amount of taxes due, the same fully appearing from the facts stated in the plaintiff's petition, there was no error on that ground, as set out in appellant's third assignment of error, in rendering judgment requiring him to pay the taxes as the receiver appointed by the court for the property against which the tax had been assessed.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered December 15, 1892.

PLEASANTS, ASSOCIATE JUSTICE, dissenting.—I can not concur in the decision rendered by the court in this case. The decision holds, that under the Act of March 10, 1874, the plaintiff is not exempt from taxation; that only the property acquired and owned by plaintiff under and by virtue of the Act of August 5, 1870, incorporating the International Railway Company, is exempt, and that all property acquired and owned by plaintiff under and by virtue of the charter of the Houston & Great Northern Railway is subject to taxation. If this construction of the act in question be correct, then, of course, all moneys earned by the plaintiff, except such as are earned by that branch of its road which was constructed under the act incorporating the International Railway, are subject to taxation; and as the petition for injunction does not aver that the tax, the collection of which it seeks to enjoin, is upon money earned by the operation of that branch of plaintiff's road, the exceptions to the petition were, in my judgment, well taken, and the lower court did not err in sustaining them, and rendering judgment for the appellee, when the appellant declined to make further amendment to its petition. It is therefore from the construction placed by the majority of this court upon the Act of March 10, 1874, that I dissent.

One of the cardinal rules for construing statutes is, that effect and operation must be given to every part of the act. This canon seems to have been ignored by the court in this instance.

After the preamble, which recites the causes and considerations which led to the passage of the law, and which recites the fact that the International Railway Company has been consolidated with the Houston & Great Northern Railway, under the name of the International & Great Northern Railway Company, the language of the act, in its first section, is in these words:

"Section 1. Be it enacted by the Legislature of the State of Texas,

that in full settlement of and satisfaction of all claims of the said The International Railroad Company and of the said The International & Great Northern Railroad Company against the State for bonds under the provision of the ninth section of the aforesaid Act of August 5, 1870, there is hereby granted to the said last named company, its successors and assigns, twenty sections, of 640 acres each, of the unappropriated public lands of the State, for each mile of railroad which has been and which may hereafter be constructed pursuant to the authority conferred by the said Act of August 5, 1870. And the said company, its successors and assigns, shall have the right to locate said lands as headright certificates were formerly located, without being under obligations to locate alternate sections for the State; and the said lands, and the certificates issued therefor, are hereby exempted and released from all state, county, town, city, municipal, and other taxes for the period of twenty-five years from the date of the respective certificates issued therefor. And the said railroad company, and its successors and its assigns, their capital stock, rights, franchises, railroads, constructed and to be constructed pursuant to the Act of August 5, 1870, and this act, rolling stock, and all other property which now is or hereafter may be owned or possessed by said company or its successors in virtue of the said Act of August 5, 1870, is hereby exempted and released from all state, county, town, city, municipal, and other taxes for a period of twenty-five years from the 5th day of August, A. D. 1875, except county and municipal taxes in such counties, cities, and towns as have donated their bonds to aid in the construction of said railroad; but this exception shall not remain in force in favor of any county, city, or town which, having thus donated bonds, shall make default in the payment of either the interest or principal thereof: *Provided*, that this exemption from taxation shall not be construed to include or apply to the lands or railroads which at the time of the consolidation herein before recited belonged to the Houston & Great Northern Railroad Company, or which has since been or hereafter may be constructed or acquired under its charter: *Provided*, nothing in this act contained shall be so construed as to exempt from taxation any lands to which the company may be entitled by virtue of the charter of the Great Northern Railroad Company, or the franchise, roadbed, rolling stock, or any property acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railroad Company; and the lands granted by this act shall not be sold to any other corporation, or to any person in trust for the use or benefit of said company: *And provided further*, that the State shall not be liable for any deficiency of the unappropriated public domain on which to locate said land certificates, nor shall any of such unlocated certificates ever constitute a claim against the State."

This act, it is scarcely necessary to say, has been construed to be a binding and subsisting contract between the State of Texas and the cor-

poration contracted with; and before we proceed to give our interpretation of the statute, it is well to settle and keep in mind who the other party to the contract is.    It is not the artificial being created by the Act of August 5, A. D. 1870, the International Railway Company, nor the other corporation referred to in the preamble of the act, the Houston & Great Northern Railway Company; for it is expressly recited in the preamble, that the first named corporation had, as it was authorized to do under the Act of the 5th of August, A. D. 1870, consolidated with the Houston & Great Northern Railway, under the name of the International & Great Northern Railway Company; and thus by the act of consolidation a new artificial person had been brought into being, endowed and invested with all the rights, powers, privileges, and franchises owned and possessed and enjoyed by the two corporations whose beings had been merged into its own, except so far as such rights, powers, privileges, and franchises are abrogated, curtailed,. or restrained by the act now under consideration.

It is, then, with this new artificial person, the International & Great Northern Railway Company, that the State has contracted; and if we give effect and meaning, as we should do, to every sentence and clause of the act, taking the language in its plain and obvious meaning, we think that the corporation itself is exempt, and all the property then owned or to be acquired in the future (save such as by the words of the act is excluded from the exemption) is exempt from every species of taxation known to the law.

The property of the company which is excluded from the exemption is, first, that which is expressly excepted in the clause of the act declaring the exemption, to-wit, property lying and being in such counties, cities, and towns as had donated bonds to aid in the construction of the International Railway; and second, the property expressly named in the first and second provisos of the act, to-wit, the land and railways which at the time of the consolidation previously mentioned belonged to the Houston & Great Northern Railway, or which has been or may hereafter be acquired or constructed under the charter of that corporation, and all lands to which the contracting corporation, the appellant herein, might be entitled to by virtue of the charter of the Great Northern Railway Company, and the franchise, roadbed, rolling stock, or any property acquired or hereafter to be acquired by virtue of the charter of the Great Northern Railway Company.

Now, what property could be acquired by the plaintiff in the suit, the International & Great Northern Railway, by virtue of the charter granted to the Great Northern Railway ?    Obviously the railways, including roadbeds, rolling stock, and franchise, built along and upon the lines upon which the Great Northern Railway was, under its charter, authorized to construct and operate roads, and all lands to which, under the then exist-

ing law of the State, the corporation would be entitled to for constructing such roads.

Thus, by giving effect to every sentence of the act, we find that not only is certain property owned by the corporation, the International & Great Northern Railway, exempt from any species of taxation, but the corporation itself is exempt. Such is the plain and unequivocal language of the statute.

But the opinion of the court just pronounced, in obvious disregard of the canon which requires that every word and every sentence of an act must be given its usual and ordinary signification, denies that the corporation is exempt from taxation, and restricts the exemption given by the act to the property owned by the corporation by virtue of the act of the 5th of August, A. D. 1870. Under this construction, this corporation may be subject to an occupation tax, or an income tax, so onerous as to render its franchise worthless; and yet the statute, as we have seen, expressly declares that said corporation, the International & Great Northern Railway, shall be exempt from any species of tax.

If, as we think, the act exempts the corporation from any species of tax, the conclusion is irresistible, that the judgment of the lower court, which subjects the revenue of the company derived from the operation of its road to taxation, is erroneous and should be reversed, and judgment rendered for the appellant, perpetuating the injunction and restraining the collection of tax assessed upon the moneys of the company in the hands of its receiver.

Delivered December 15, 1892.

NOTE.—There being dissent upon questions material to the case, and the same being certified to the Supreme Court, a writ of error was granted to that court, and on March 24, 1893, the judgment of the majority of the Court of Civil Appeals was affirmed by the Supreme Court.—REPORTER.