## SECOND NATIONAL BANK v. GIBBONEY.

[No. 6,626.    Filed April 7, 1909.]

1.  TRIAL.—*Interrogatories.—When Controlling.*—Answers to the interrogatories to the jury control the general verdict only where they are in irreconcilable conflict therewith under any supposable facts within the issues.    p. 493.

2.  TRIAL.—*Interrogatories.—Uncertainty.—Banks.—Title to Money Deposited.*—In an action by a sister for money deposited for her in defendant bank by her brother, and subsequently checked out by him, using her name without authority, interrogatories asking whether the money checked out by him was his money, and whether his creditors were entitled thereto, are uncertain, and any answers which could have been made thereto could not control a general verdict for plaintiff.    p. 493.

3.  EVIDENCE.—*Failure to Produce Material Witness.*—Where a party fails to produce a material witness within such party's reach, the jury may infer that his testimony, if produced, would be unfavorable to such party.    p. 497.

4.  BANKS AND BANKING.—*Pass-Books.—Admissions.*—A pass-book, containing a record of the time and amount of deposits, is an admission by the bank that it owes such depositor the money therein specified.    p. 497.

5.  BANKS AND BANKING.—*Pass-Books.—Contracts.*—The entry in a pass-book of money received by a bank constitutes a contract to repay such money to the depositor or order.    p. 497.

6.  BANKS AND BANKING.—*Deposits.—Pass-Book.—Title.*—The deposit of money in a party's name and the delivery of a pass-book to her, passes the title of the deposit to her.    p. 497.

7.  BANKS AND BANKING.—*Deposits.—Checks.*—The drawing of a check in favor of plaintiff and the deposit of same to plaintiff's credit, constitute the plaintiff a depositor, and the charging of such check to the drawer's account and crediting it to plaintiff's account constitute an acceptance of such check.    p. 498.

8.  PRINCIPAL AND AGENT.—*Deposits.—Checking.—Banks.*—An agent authorized to deposit money for another in a bank, has no implied authority to check out such money.    p. 498.

9.  ESTOPPEL.—*Checking Money.—Banks.*—Where a brother deposited money to the credit of his sister, a pass-book being issued to her, and he afterwards without her knowledge or consent checked out such money, using her name, the sister is not estopped from maintaining an action against such bank for the amount of such deposit.    p. 498.

10.  BANKS AND BANKING.—*Deposits.—False Signature.*—In an action against a bank to recover money withdrawn by means of

forged checks, the burden is upon the defendant to show how the false signature upon the bank's signature book was placed there.  p. 499.

From Harrison Circuit Court; *Christopher W. Cook,* Judge.

Action by Caroline Gibboney against the Second National Bank of New Albany. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*C. L. & H. E. Jewett* and *William Ridley,* for appellant. *Stotsenburg & Weathers,* for appellee.

COMSTOCK, P. J.— Appellee filed her amended complaint, in two paragraphs, in the Clark Circuit Court to recover the sum of $980.93, money which the appellee alleged she had deposited in the name and by the style of "Mrs. Perry Gibboney" in appellant's bank. The cause was venued to the Harrison Circuit Court, where it was tried by jury upon the two paragraphs of the amended complaint, the answers of the appellant in general denial, plea of payment, and two affirmative paragraphs, and the appellee's reply in denial and in avoidance, resulting in a verdict in favor of appellee for $1,166.66, and judgment rendered for that amount. With the general verdict the jury returned answers to certain interrogatories submitted by the court.

One of the specifications of error is the action of the court in overruling appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict. It is the recognized rule that a special finding of facts controls the general verdict only when there is an irreconcilable conflict between the two, and the facts shown by the answers to interrogatories must exclude the possible existence of other controlling facts relating to the same subject which might have been proved under the issues. There is no such conflict presented by the answers before us, and the court properly overruled said motion.

It is claimed that the court erred in refusing to submit to the jury the following interrogatories: "68. Was the money

which was checked out by Chester W. Kay his money?
2. 69. Was said money, money to which the creditors of Chester W. Kay were entitled?'' These interrogatories were uncertain, but, in addition, no answer or answers that might have been made to them could have overthrown the general verdict.

The pertinent facts, as established by the evidence, are substantially as follows: About three years before the deposits were made the appellee, Caroline Kay, lived with her mother, who was in bad health, and her brother, Chester W. Kay, in the town of Greenville, Floyd county, about twelve miles north of New Albany. The mother furnished the son $500 with which to start a store, with the agreement and arrangement that he should take care of appellee. Chester W. Kay, who was also in bad health, was assisted in the store by the appellee, who not only clerked in the store but took care of the invalid mother and finally the invalid brother. On December 7, 1899, appellee, who was nineteen years old, married Perry Gibboney. After appellee's marriage she adopted and used her husband's name, and has at all times signed her name ''Mrs. Perry Gibboney.'' Appellee's services in the store and to her brother were worth more than $1,000. A few days after the marriage, sometime between December 7 and 13, Kay sold the store for $2,104.83. At that time, and before he received the money for the store, Kay had more than $1,000 in bank. In pursuance of the agreement made with the mother, and in payment of appellee's services, Kay agreed to pay her $1,000. He gave her about $20 in cash, and was to deposit the remainder in appellant bank for appellee. This was agreed to by both Kay and appellee. On the morning of December 13 Kay and appellee were in the store, and he, in her presence, gave Philip Smith, a stage driver, $400, with the instruction to deposit same to the order of Mrs. Perry Gibboney in appellant bank. A deposit slip was on that date made out at the bank showing: ''Deposited by Mrs. Perry Gibboney, cur-

rency, $333; gold, $15; silver, $4; check, $48; total, $400.''
Two days later, Kay, having in appellant bank $622.93, drew
a check payable to Mrs. Perry Gibboney for $580.93, and
then wrote Mrs. Perry Gibboney's name on the back and
sent it by the stage driver, Smith, to the appellant bank to
be deposited to Mrs. Gibboney's account. Mrs. Gibboney
knew that the deposits were made for her, but in what form—
whether cash or checks—she did not know. The bank re-
ceived the second deposit, made out a deposit slip of that
date: ''Deposited by Mrs. Perry Gibboney, check $580.93.''
Said check was charged to Kay's account on that date, leav-
ing him $42 which remained therein until December 23,
1899, when he deposited $908.25. The appellant issued a
pass-book to Mrs. Perry Gibboney, which was carried to
Greenville by the stage driver and given to appellee. The
pass-book was in the usual form, in the name of Mrs. Perry
Gibboney, showing the two deposits amounting to $980.93.
Appellee took the pass-book to her home and kept it in her
possession until she went to Crawfordsville to make her
home, which was on December 23, 1899, when she left the
pass-book with her brother for safe-keeping. She was then
nineteen years of age, had never done any banking busi-
ness, and did not know that she needed the book to draw her
money. After leaving her old home appellee saw her brother
but once, when he came for a short visit with her, until the
day before his death in June, 1901. A false signature was
found pasted in the bank's signature book. The signature
was on a piece of white paper, and in the handwriting of
Kay, but when written, by whom sent, when pasted in, or
when received by the bank is not shown. After appellee
left her home on December 23, 1899, for Crawfordsville, said
Kay from time to time, without her knowledge, drew checks
and signed the name of Mrs. Perry Gibboney, and these
checks were honored by the bank. All these checks were
without the authority of appellee, and in fact were forgeries.
On January 23, 1900, all of the money except $64 having

been drawn out by these forged checks, a counter receipt, which was used by banks at that time to evade the payment of a stamp, and could be drawn only by a customer in-person at the counter of the bank, was presented to appellant bank and paid. It was signed by the same forged signature. Kay at the time of making these forgeries had a deposit in his own name of more than $1,000. A widowed sister of Kay's discovered him writing appellee's name to a check, and expressed surprise, and asked him for an explanation, but he gave an evasive reply, stating: "The money is there." Kay married after appellee left home, but spent considerable of his time in search for health in North Carolina and Colorado, and died in June, 1901. His father-in-law, Goss, administered his estate, which consisted of $775.24 cash in bank, a stock of implements and hardware, together with other personalty, the amount of the estate not being given. Appellee wrote for her money July 24, 1901, and continued to write for it during August and September of that year, and although Kay's estate was not settled for nearly a year afterwards, the bank took no steps to recover the money it had wrongfully paid out. Appellee made no demand for her money for a year and a half, because she was saving it to purchase her a home. After the bank refused to pay appellee, she thought she would have to have her bank-book in order to get it. She finally got the book from the widow of her brother in the summer of 1903, and employed an attorney to get her money. The attorney, after making a legal demand both by check and tendering a receipt, brought suit. The answers of appellant to interrogatories propounded to it show that appellant denied ever having an account with appellee, or having in any manner dealt with her. Appellee never furnished any signature to the bank, and did not know that one was required. After the forged checks were paid by the bank and canceled the bank did not return them to its customer as is usual in such cases, but retained them. The name "Gibboney" on the

back of the $580.93 check and on some of the other checks being spelled with an "m" instead of an "n." When appellee got the pass-book from the widow of Kay in 1903, and after the matter of the forgeries had been discovered, there was found therein an entry of the checks drawn, apparently in Kay's handwriting, but when made or under what circumstances is unknown. Appellee in 1902 moved from Crawfordsville to Marion, Indiana, where she still resides.

The absence of the testimony of G. W. Harrison, who was cashier of the appellant bank at the time the deposits were made, and whose testimony was within the reach of appellant, is noted. From this fact the jury was at liberty to infer that his testimony would have been unfavorable to appellant.

No error is predicated upon the admission or the rejection of evidence. The facts proved were all within the issues, and we may, without considering in detail the various pleadings, pass upon the final question—the ultimate rights of the parties upon the merits of the cause. Appellee's brother recognized his financial obligations to her, and paid her, as shown, by cash and by deposits in bank in her favor. When the deposits in question were made, and the amount and date thereof entered in the pass-book issued to appellee, it was an admission that the bank was a debtor to appellee. *Lamb* v. *Morris* (1889), 118 Ind. 179, 4 L. R. A. 111; *President, etc.,* v. *Lydig* (1809), 4 Johns. (N. Y.) *377, 4 Am. Dec. 289; *Hepburn* v. *Citizens Bank, etc.,* (1847), 2 La. Ann. 1007, 46 Am. Dec. 564. The entry in the pass-book was a contract to repay the money to the depositor or her order. *Long* v. *Straus* (1886), 107 Ind. 94, 57 Am. Rep. 87; *Coffin* v. *Henshaw* (1858), 10 Ind. 277.

The depositing of the money in appellee's name, and the delivery of the pass-book to her, passed title to appellee. *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25; *Goclz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67.

The acceptance of the check of Chester W. Kay, and charging him with the amount of the check, and placing the proceeds to the credit of the payee, created, between the bank and appellee, the relation of debtor and creditor. *Harrison* v. *Wright* (1885), 100 Ind. 515, 50 Am. Rep. 805; *Quattrochi Bros.* v. *Farmers and Merchants Bank* (1901), 89 Mo. App. 500. The transfer of the $580.93 from the account of Kay to that of appellee did not harm the bank. The effect was the same as if Kay had drawn the check in his own favor, received the money therefor, and deposited it to the credit of appellee. Such action on the part of the bank constituted an acceptance of the check. *Commercial Nat. Bank* v. *Lincoln Fuel Co.* (1896), 67 Ill. App. 166; *Bryan* v. *First Nat. Bank* (1903), 205 Pa. St. 7, 54 Atl. 480.

The deposits were not made in either case by Kay, but were taken by the stage driver, and by him deposited. An agent who is authorized to make a deposit in a bank has no implied authority to draw it out. *Walker* v. *State Trust Co.* (1899), 40 Hun, App. Div., 55, 57 N. Y. Supp. 525; *Heath* v. *New Bedford, etc., Trust Co.* (1904), 184 Mass. 481, 483, 69 N. E. 215; *Brown* v. *Daugherty* (1903), 120 Fed. 526.

The foregoing acts of Chester W. Kay and of the appellant placed the title of these deposits in appellee. What did she do to divest that title or to estop herself from asserting her rights as a creditor of the bank?

Appellee did not see, during the lifetime of her brother, the pass-book, after any portion of the deposits had been checked out and entries made of the same. She received no statement of her account from the bank. She was unfamiliar with the business methods of banks. That she made no inquiry as to the state of her account until July, 1901, eighteen months after the first deposit was made, may be explained by the right that she had to depend upon the money's re-

maining to her credit in the bank until she either checked it out herself or authorized some one else to do so. This she knew she had not done. Her brother died in June, and a month afterward she demanded her money, which demand was refused. It does not appear how or when the false signature was put upon the bank signature book. The burden of this was upon appellant. Had appellee received statements from time to time of her account, or had the canceled forged checks been delivered to appellee, as is the custom, and she had failed to repudiate them, the circumstances would have been strongly against her.

In the case at bar there was no duty resting upon appellee to notify the bank, because she had no knowledge of any transaction affecting her interest, except the deposits. Ignorant of the wrongs being done her, her silence or inaction could not estop her.

There was ample evidence to support the verdict, and we find no reversible error.

Judgment affirmed.