## BEARD, AUDITOR, v. THE PEOPLES SAVINGS BANK.

[No. 8,448. Filed March 28, 1913.]

1. TAXATION.—*Property Taxable.—Savings Banks.—Surplus.*—The surplus fund of a savings bank organized and conducted under the provisions of §§3348-3401 Burns 1908, §§2703-2757 R. S. 1881, Acts 1901 p. 155, Acts 1903 pp. 211, 321, viewed in the light of the statute, is held by the trustees of the bank in a *quasi* trust capacity, and is not taxable to the depositors, but, in view of the statutes on the subject of taxation in general, and those relating to the taxation of savings banks in particular, such fund is subject to taxation as against the bank. pp. 189, 190, 191.

2. TAXATION.— *Property Taxable.— Money.— Credits.—* Money is personal property and as such is subject to taxation under the provisions of §10143 Burns 1908, Acts 1891 p. 199, and under the same section all forms of indebtedness are personal property and subject to be taxed. p. 190.

3. TAXATION.—*Power to Tax.—Constitutional Law.—*The power to tax is inherent in the legislature, and §1, Art. 10 of the Constitution, making it the duty of the legislature to select the property subject to taxation and to prescribe regulations for its just valuation, is a limitation of that power. p. 190.

4. TAXATION.—*Property Taxable.—Statutes.—*Section 10142 Burns 1908, Acts 1891 p. 199, providing that all property within the jurisdiction of the State,, not expressly exempted, shall be subject to taxation, is broad enough to include all forms of property whether real or personal. p. 190.

5. TAXATION.—*Policy of State.—*It is the settled policy of the State to subject all property to taxation except that which is by law exempt. p. 191.

6. TAXATION.—*Property Taxable.—Investments in Nontaxable Securities.—Surplus Funds of Savings Bank.—*Funds invested in nontaxable securities cannot be reached for taxation, so that the surplus fund of a savings bank, having authority to invest in such securities, thus invested on the first day of March in the year in which it was sought to be taxed, was not subject to taxation. p. 192.

7. TAXATION.—*Power of State.—Capital Stock of National Banks.*
—The capital stock of a national bank invested in government
bonds is not subject to taxation as against the bank, although
such fact may not affect the right of the State to tax the certifi-
cates or shares of stock in the hands of the stockholder.    p. 192.

8. PLEADING.—*Complaint.—Demurrer.—Admissions.*—That certain
funds in the possession of a bank constituted a part of such
bank's deposits is admitted by the demurrer to a complaint
which alleged such fact.    p. 192.

9. BANKS AND BANKING.—*Deposits.—Relation of Bank and Depos-
itor.—Taxation.*—Where a general deposit of cash is made, the
bank, as a general rule, becomes the absolute owner of the cash
and a debt from the bank in favor of the depositor arises for the
amount of such deposit, thus creating the relation of debtor and
creditor, but for the purposes of taxation, money deposited in a
savings bank or other bank is regarded as the property of the
depositor and taxable to him instead of to the bank.    p. 193.

From Vanderburgh Circuit Court; *Curran A. DeBruler,*
Judge.

Action by The Peoples Savings Bank against Charles P.
Beard, auditor of Vanderburgh County, and another. From
a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Hiram M. Logsdon, Albert J. Veneman, George A. Cun-
ningham* and *Daniel Ortmeyer,* for appellants.

*James T. Walker, Henry B. Walker, Stuart, Hammond
& Simms, H. J. Baker* and *Osborne, McVey & Osborne,* for
appellee.

*Robinson & Stilwell, Amici Curiae.*

LAIRY, J.—Appellee brought this action in the Vander-
burgh Circuit Court to enjoin appellants as auditor and
treasurer of the county from assessing and collecting certain
taxes on its surplus fund and on the cash in the bank on
March 1, 1911. A demurrer to the complaint was filed and
overruled and the appellants, declining to plead further,
judgment was rendered in favor of appellee perpetually
enjoining the assessment and collection of such taxes.

The complaint discloses, in substance, that the plaintiff
is and has been for many years a savings bank incorporated

under the laws of this State, and is situated at Evansville, Indiana. On March 8, 1911, the bank by its proper officers, presented to the township assessor, a tax schedule in which was stated the total amount of its personal property upon which according to its contention, it is required to pay taxes for the year 1911. This personal property consisted of banking furniture, file cases, safes and fixtures, valued at $4,000. There was also assessed against the bank at this time real estate of the value of $26,810. In July of the same year, the county board of review, upon a hearing, assessed against the bank in addition to the property described, the sum of $21,000 which sum represented the amount of cash in the bank on March first. The bank appealed from this assessment to the State Board of Tax Commissioners, and a few days later, a citizen taxpayer of the county appealed to the same board from this assessment alleging that the bank owned a large surplus which was likewise taxable. On August 1, 1911, the State Board of Tax Commissioners sustained the assessment as made by the county board of review, and in addition thereto assessed the surplus of the bank in the sum of $215,000. The complaint further discloses that the $21,000 cash in the safe of the bank on March 1, 1911, was a part of the deposits of the bank and that the surplus fund was on said date all invested in bonds and securities which, by the law of the State of Indiana are exempt from taxation.

The objections to the sufficiency of the complaint are based solely upon the ground that one or both of these items were subject to taxation. We are thus called upon to determine whether the bank could be taxed upon either of such items. If it could the demurrer should have been sustained; but if it could not the demurrer was properly overruled.

Appellee was organized and is being operated as a savings bank under the act of May 12, 1869, and the amendments thereto. The act as amended is §§3348-3401 Burns 1908, §§2703-2757 R. S. 1881, Acts 1901 p. 155, Acts 1903 p. 211,

Acts 1903 p. 321. Savings banks organized under the provisions of this statute have no capital stock and no stockholders. Their business is managed by a board of trustees who have no interest in the assets of the bank except to control, invest and manage such assets for the benefit of the depositors. The trustees have power to purchase, hold and convey real estate under certain prescribed conditions. The savings bank is authorized to receive deposits and invest the same in such securities as are specified by the act. All deposits shall be repaid to the depositor when required by him, but at such times, and with such dividends from profits, and under such regulations as the board of trustees may prescribe not inconsistent with the provisions of the act. Section 28 of the act (§3375 Burns 1908, §2730 R. S. 1881), makes it the duty of the board of trustees to provide a sinking fund by setting aside from the gross profits annually not less than one-half of one per cent of the deposits. This shall be continued until the sinking fund amounts to ten per cent of the deposits and it is lawful to accumulate such surplus until it shall amount to twenty-five per cent of the amount of all deposits held by such bank. This fund shall be invested and held to meet any contingency which may arise in the business of the bank and it cannot be used for the payment of dividends to depositors. All savings banks shall make up their accounts semi-annually on the first day of January and July of each year and all dividends and profits shall be divided, credited or paid to the depositors on or before the thirty-first day of January and July, respectively. In making these dividends it is the duty of the trustees to divide, as nearly as may be practical, all of the profits remaining after deducting the necessary expenses and the reserve for the surplus fund from the gross profits, but it is unlawful to declare any dividend, except from profits earned during the time for which such dividend is declared. If a residue of profits remains after making the dividends provided for, the accumulation of such undivided profits

shall be distributed to the depositors as often as once in three years.

We have given the substance of those provisions of the act which in our opinion bear upon the question to be determined in this case. We shall first consider the taxability of the surplus fund. When viewed in the light of the statute, we think it is apparent that this fund is held by the trustees of the bank in a *quasi* trust capacity. It does not belong to the trustees and it does not belong to any particular depositor or class of depositors of the bank. The depositors of such a bank during any dividend period are entitled to share in the net profits earned during that period under such regulations with respect thereto as may have been adopted by the board of trustees, but they have no interest in the surplus fund by which they can compel distribution either as a dividend or otherwise. This fund must be preserved to meet any emergency which may arise in the business, and in case no emergency arises must be maintained so long as the bank continues to transact business. Upon the dissolution of the bank it would, no doubt, belong to the depositors, but whether it would be distributed to those who happened to be depositors at that time, or to all who have been depositors and entitled to dividends at any time while the bank was in existence, must be left to be determined when such a question is presented. It is apparent, we think, that the surplus fund in such a bank as this can not be taxed to the depositors, and that, if it is taxable at all, it must be taxed to the bank.

The Constitution of this State provides that, "The general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may be especially exempted by law." §1, Art. 10, Constitution of Indiana. The General Assembly

has enacted various statutes on this subject among which is the following section, "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." §10142 Burns 1908, Acts 1891 p. 199.

2. Money is personal property and as such is subject to taxation under the provisions of §10143 Burns 1908, Acts 1891 p. 199, and under the same section, all forms of indebtedness are personal property and subject to be taxed. If, therefore, the surplus fund was in the hands of the trustees of the bank in cash, or if it were invested in notes or other evidence of indebtedness, not exempt, it would be subject to taxation provided the legislature has made provisions for the valuation and assessment of such property. The power to tax is inherent in the legislature and the

3. constitutional provision quoted in this opinion is a limitation of that power. It is thereby made the duty of the legislature to select the property subject to taxation and to prescribe regulations and methods for the just valuation of such property. *State Board, etc.*, v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826. The stat-

4. ute quoted is broad enough to include all forms of property whether real or personal, and the remaining question is, Has the legislature made provisions for the valuation and assessment of the sinking fund of savings banks?

Sections 10233, 10234 Burns 1908, Acts 1891 p. 199, §§73, 74, provide for the assessment of certain domestic corporations among which are savings banks. The first

1. section provides that the president or other proper accounting officer of such corporation shall make out and deliver to the assessor a sworn statement. This statement is required to set forth certain facts among which is the value of the tangible property. The following section provides that this schedule shall be laid before the board of review at its annual meeting and shall be considered in making the assessment against such corporation. The sec-

tion further provides that, in cases where the capital stock exceeds in value the tangible property listed for taxation, such capital stock shall be liable to taxation for such excess of value, but, where the capital stock or any part thereof is invested in tangible property returned for taxation, such capital stock shall not be assessed to the extent that it is so invested. These provisions clearly indicate that the tangible property of such corporations shall be assessed, but that where capital stock exists and a part or all of such capital is invested in tangible property, such capital stock shall not be assessed to the extent that it is so invested. It is apparent, we think, that the provisions of this section in reference to the assessment of capital stock can have no application to savings banks which have no capital, but that the provisions as to the assessment of tangible property does apply to such banks. It is the settled policy of this State to subject all property to taxation except that which is by law exempt. *State, ex rel.,* v. *Real Estate, etc., Assn.* (1898), 151 Ind. 502, 51 N. E. 1061. The capital stock in banks and trust companies is not taxed as such, but the shares of stock which represent such capital is assessed to the shareholder thereof in the township, city or town where such bank or trust company is located. §§10208, 10209 Burns 1908, Acts 1907 p. 624. The next following section (§10210 Burns 1908, Acts 1907 p. 624), requires the county board of review to fix the true cash value of each of said shares of stock and that in doing so, it shall take into consideration the capital, surplus, undivided and individual profits, if any, as shown by the statement under oath which this section requires to be made out and delivered to the assessor for the use of the county board of review. This shows that it is the policy of the State to subject to taxation the sinking fund and undivided profits of banks having a capital stock, and, in view of our statutes on the subject of taxation in general and those relating to taxation

of savings banks in particular, we can see no reason for holding that the surplus fund in a savings bank stands upon any different footing.

Under the averments of the complaint the surplus of the savings bank was not subject to taxation on March 1, 1911, for the reason that it was, on that date, invested in

6. its entirety in municipal bonds and other nontaxable securities. The bank having this fund under its control was given authority by statute to invest it in this kind of security. §§3375, 3366 Burns 1908, §2730 R. S. 1881, Acts 1903 p. 211. When a fund is invested in securities of this character, it is no longer taxable as cash; and, as the securities are exempt, the fund cannot be reached for taxation.

Appellant cites a number of cases to sustain the proposition that the right of a state to tax shares of stock in a national bank is not affected by the fact that the cap-

7. ital of such bank is all invested in government bonds. *Wright* v. *Stilz* (1866), 27 Ind. 338; *People* v. *Bradley* (1866), 39 Ill. 130; *City of Utica* v. *Churchill* (1865), 33 N. Y. 161. There is a difference between taxing the shares, or certificates of stock in the hands of a stockholder, and taxing the capital of the bank, as such, to the corporation. The certificate of stock belongs to the stockholder, but the capital stock is the property of the corporation. The capital stock of a national bank invested in government bonds is not subject to taxation as against the bank. *People* v. *Commissioners, etc.* (1863), 2 Black 620, 17 L. Ed. 451; *Bank Tax Case* (1864), 2 Wall. (U. S.) 200, 17 L. Ed. 793; *State, ex rel.* v. *Rogers* (1883), 79 Mo. 283; *Ottumwa Savings Bank* v. *City of Ottumwa* (1895), 95 Iowa 176, 63 N. W. 672.

The question as to whether the bank should be taxed for the cash in its possession on March 1, 1911, remains to be considered. The demurrer admits that

8. this cash constituted a part of the bank's deposit. This cash was subject to taxation and the only ques-

tion is whether it should be taxed to the bank or to the depositor or to both. As between a bank and a depositor, the general rule is that a general deposit of cash creates the relation of debtor and creditor. The bank becomes the absolute owner of the cash and a debt from the bank in favor of the depositor arises for the amount of such deposit. *McLain* v. *Wallace* (1885), 103 Ind. 562, 5 N. E. 911; *Fletcher* v. *Sharpe* (1886), 108 Ind. 276, 9 N. E. 142; *Union, etc., Trust Co.* v. *Indianapolis Lounge Co.* (1898), 20 Ind. App. 325, 47 N. E. 846.

Appellant asks us to apply this rule as between the taxing officers on the one hand and the bank and its depositors on the other, and to hold that the cash deposited is the absolute property of the bank for taxation purposes and that as such it should be taxed to the bank. It is undoubtedly the law that money on deposit is taxable to the depositor. That such was the intention of the legislature is made clear by §10202 Burns 1908, Acts 1891 p. 199, which provides a form of schedule for personal property for purposes of taxation. The schedule of chattels has for its first item, "Money on hand or on deposit." This indicates that money on deposit is to be treated for taxation purposes as the property of the depositor the same as money on hand. The same schedule also indicates that for the purpose of taxation the deposit of money is not regarded as creating a debt due the depositor from the bank. If it were so regarded, it would be required that such deposits be set out in the former part of the schedule headed, "Personal Property—Credits." In this part of the schedule the taxpayer is required to set out all forms of indebtedness due him from others and from the aggregate amount of such credits he is permitted to deduct his *bona fide* indebtedness. From this schedule, it is apparent, we think, that the legislature treated deposits in banks, for taxation purposes, as chattels of the depositors and not as credits due them. In Nebraska it has been ex-

pressly decided that a depositor in a bank cannot, in listing his property for taxation, treat his deposit as a credit due him from the bank, and that he cannot deduct from such deposit the amount of his *bona fide* indebtedness. *Critchfield* v. *Nance County* (1906), 77 Neb. 807, 110 N. W. 538. In most jurisdictions where the question has arisen it has been held that money on deposit in banks is taxable to the depositor and not to the bank. *Branch* v. *Town of Marengo* (1876), 43 Iowa 600; *Commonwealth* v. *Wathen* (1907), 126 Ky. 573, 104 S. W. 364; *Critchfield* v. *Nance County, supra; Campbell* v. *Wiggins* (1892), 2 Tex. Civ. App. 1, 20 S. W. 730.

In view of the conclusion we have reached, the other questions discussed by counsel need not be considered. The trial court did not err in overruling the demurrer to the complaint.

Judgment is affirmed.

NOTE.—Reported in 101 N. E. 325. See, also, under (1) 37 Cyc. 828; (2) 37 Cyc. 783; (3) 37 Cyc. 715; (4) 37 Cyc. 773; (5) 37 Cyc. 767, 773; (6, 7) 37 Cyc. 880; (8) 31 Cyc. 333; (9) 37 Cyc. 828. As to classification of property for the purpose of taxation, see 62 Am. St. 175. As to such transactions with a bank as are deemed to be deposits, see note to *Long* v. *Straus* (Ind.), 57 Am. Rep. 97. The question of state taxation of capital of national banks is treated in 3 L. R. A. (N. S.) 584.