S. STERNBERG ET AL. v. CROHON & RODEN CO. ET AL.

(Filed 19 December, 1916.)

**1. Appeal and Error—Prejudicial Error.**

Where intervenors claim proceeds of a paid draft, the introduction on the trial of the draft and letter accompanying it are not objectionable when there is no controversy as to the form of the draft and the letter is not prejudicial to appellant's contention.

**2. Evidence—Declarations—Admissions—Corporations — Officers—Principal and Agent.**

The officers of a bank in its action to recover the proceeds of a paid draft as a holder in due course are merely agents thereof, and their statements made in reference to the transaction, after its occurrence, are not competent as admissions made by the bank.

**3. Evidence—Depositions—Selected Portions.**

Selected portions of a deposition are incompetent as evidence of a fact in controversy. *Boney v. Boney,* 161 N. C., 521, cited and approved.

**4. Instructions—Requests—Substance—Banks and Banking—Bills and Notes —Due Course.**

This controversy affecting the question as to whether an intervening bank acquired a draft as a holder in due course, or for collection under an express or implied agreement that it was to be charged back to the depositor's account if not paid, it is *Held,* that the court gave substantially the requested prayers of the appellant in his general charge, and no error was committed in refusing appellant's requests, though they stated correctly the law as applied to the facts of the case.

APPEAL from *Harding, J.,* at March Term, 1916, of BUNCOMBE.

This is an action brought by the plaintiffs to recover damages on account of breach of contract by the defendant Crohon & Roden, Incorporated, in which the plaintiffs attached proceeds of a certain draft in the possession of the American National Bank of Asheville, North Carolina. The Old National Bank of Grand Rapids, Michigan, intervened and claimed ownership of the funds.

The draft was drawn by Crohon & Roden on the plaintiff and was payable to the intervening bank. There was also a bill of lading attached, covering a shipment of hides.

The plaintiff paid the draft and then attached the proceeds.

The bank introduced the draft and offered evidence tending to prove that it was a purchaser for value, and the plaintiff introduced evidence tending to prove that the bank was not a purchaser for value, but an agent for collection.

The depositions of several officers of the bank were taken, and the plaintiff offered selected portions of the depositions as declarations or admissions, which the court refused to admit, and the plaintiff excepted.

The plaintiff in apt time requested his Honor to submit the following special instructions to the jury:

"Ownership of the funds in controversy in this case by the bank does not necessarily follow an unrestricted indorsement of the draft and bill of lading by Crohon & Roden to the bank. Although there was a blank endorsement of the draft and bill of lading by Crohon & Roden to the bank, yet if you find from the evidence that the bank did not become unconditionally responsible for the amount of the draft, but accepted the draft on the credit of Crohon & Roden and with the intention of holding Crohon & Roden responsible primarily for the amount of the draft, you should answer the first issue 'No.'"

The judge refused to give said special instruction, and the plaintiff excepted.

"It is not conclusive upon the question of ownership of the draft that before collection the amount of the draft was credited to the account of Crohon & Roden, against which he had the privilege of drawing by check. Such privilege is merely a favor if the bank may cancel the credit or charge back the draft to the account of Crohon & Roden when it is not paid by S. Sternberg & Co."

The judge refused to give said special instruction, and the plaintiff excepted.

"Although the amount of the draft may have been placed to the credit of Crohon & Roden, with permission to him to draw out the funds by check, yet if the implied understanding from the course of dealings between the bank and Crohon & Roden was that if the draft was not paid or the funds received by the bank, the amount thereof

was not to be charged back to the account of Crohon & Roden, this was really a bailment for collection, and as between Crohon & Roden and the bank, the title never passed. Whether the bank really owns the paper or not depends upon whether the paper was really taken for collection upon the credit of Crohon & Roden, although there was no indorsement restricting it to that effect, or whether it was taken absolutely."

The judge refused to give said special instruction, and the plaintiff excepted.

"If you should find from the evidence in this case that the bank and Crohon & Roden had a tacit understanding between them from their course of dealings that, although the amount of the draft was credited to Crohon & Roden at the time it was deposited, so that Crohon & Roden could draw against it, yet the tacit agreement was that if the paper so deposited was not paid on presentation, the amount thereof was to be charged up to the account of Crohon & Roden, or taken off his next deposit ticket, this stamps the transaction as being a taking of the draft for collection, and no title passed to the bank, and the bank is not entitled to the funds in this case."

The judge refused to give said special instruction, and the plaintiff excepted.

"If you find from the evidence in this case that it was the custom of the bank, when drafts of Crohon & Roden were not paid, to charge them back to Crohon & Roden, this would be evidence for you to consider upon the question of whether or not there was a mere transfer for collection."

The judge refused to give said special instruction, and the plaintiff excepted.

"If you should find from the evidence that Crohon & Roden are still solvent, and that the bank accepted the draft of Crohon & Roden, expecting to charge back the draft to Crohon & Roden if it was not paid, and expected to hold Crohon & Roden responsible for said draft, and that if Crohon and Roden had become insolvent or in danger of insolvency at any time the bank would have proceeded to collect its debt from Crohon & Roden, and at the time that Crohon & Roden became depositors with the bank they gave to the bank a note signed by the company, protecting the bank from all liabilities on paper handled by the bank for Crohon & Roden, and there was a tacit agreement between the bank and Crohon & Roden that paper was taken on the credit of Crohon & Roden, then and in that event the bank would not be the owner of the funds in controversy."

The judge refused to give said special instructions, and the plaintiff excepted.

"The plaintiff in this action contends that under this evidence you ought to find that some time before depositing the draft referred to in this case, Crohon & Roden asked the bank if it, the bank, would handle drafts for Crohon & Roden, and at that time Crohon & Roden gave to the bank a paper signed by the ·corporation and by the individual members of the corporation, protecting the bank from any liability which the corporation might owe the bank and from any liability on paper handled by the bank; that it was the custom for Crohon & Roden to deposit drafts with the bank and receive credit at the time of the deposit, and that the bill of lading attached to the draft was of no particular importance to the bank, but the bank relied on the credit of Crohon & Roden and made a difference in the matter of drafts, which difference was that where a solvent party deposited a draft with the bank, the bank placed the amount of the draft immediately to the credit of the solvent party, but if the party was not solvent, the bank would not give credit until the proceeds of the draft were received; that there was a tacit understanding between the bank and Crohon & Roden that if the draft was not paid, it should be charged back against the account of Crohon & Roden, and that the deposit credited to Crohon & Roden was merely an advanced credit given to them, and not the outright purchase of the draft; that no discount was charged until the proceeds had been received from the draft; that the bank recognized the solvency of Crohon & Roden and has not charged the draft back because it wishes to protect Crohon & Roden in this lawsuit, but has a tacit understanding that if Crohon & Roden should become in danger of insolvency at any time, it, the bank, will take the draft out of the deposits of Crohon & Roden, and is relying upon the credit of Crohon & Roden to protect it, and accepted the draft for collection although there was an unrestricted indorsement of the draft. If you are satisfied from the evidence that these contentions are true, then I charge you that the bank is not the owner of the funds in question, and you should answer the issues as to ownership in favor of the plaintiff, S. Sternberg & Co."

The judge refused to give said special instruction, and the plaintiff excepted.

His Honor, among other things, charged the jury:

"But if you find, gentlemen of the jury, from the evidence in this case—if the intervenor has failed to satisfy you by the greater weight of the evidence, or if you find by the greater weight of the evidence in this case, gentlemen of the jury, that at the time that the draft was delivered by the defendant to the Old National Bank that it was delivered to them as an agent only, that is, with the instructions, either expressed or implied, or by the ordinary course of business so understood

by the defendant and the Old National Bank, that the Old National Bank was not buying the draft, but that it was receiving it for collection only, and that it was forwarding it to its agent in Asheville for the purpose of collecting it, that it was holding it and receiving it as such agent, then the court charges you, even though you should find that the proceeds of that draft were placed to the credit of the defendant, that that was an immaterial accommodation on the part of the bank to the defendant in this case to permit them to draw on it, but that they took the draft and held it only for collection, with the understanding that they were to collect it and report to the defendant when the collection was made, then that would be such an agency as would not carry the legal title to the intervenors in this case, and you would answer this first issue 'No.'

"Now, the plaintiffs contend that the evidence in this case ought to satisfy you by its greater weight that that understanding existed at that time, that the draft at the time it was paid into the bank—that the total proceeds of the draft were credited to the defendant, and that the matter of discount, the amount of discount or charges of the bank for discounting or collecting, was held in abeyance until they should hear from their agent here, the American National Bank, as to whether or not the draft had been collected and forwarded to the bank in New York, and that when that was done, that then they would take the amount of exchange, which was equal to the amount placed to their credit running from the time that it was placed in the bank up to the time it was reported as being in New York, and the exchange was charged to them; and the plaintiffs contend that that is a circumstance for you to consider; that if it had been an outright sale of the draft, that the discount would have been considered at that time and deducted at that time, and that the proceeds of the draft, less the discount, would have been credited to their account, and not the full amount. And the plaintiff contends that that is a circumstance for you to consider, and again: but if the defendant placed the draft in the bank and the bank received it, either by an agreement among themselves or by an understanding resulting from the ordinary methods of doing business between the intervenor and the defendant, that it was being received by the bank only as a collecting agency, and that was the method that the defendant had of doing business—collecting money through this bank, its agent for the purpose of collecting this debt, and that when the draft was sent here by the Old National Bank it was paid, then the court charges you that that was an agency, and you will answer that issue 'No.' So it turns upon the question, gentlemen of the jury, whether or not the defendants sold that draft to the bank and the bank gave them credit for the proceeds of it as a sale, or whether the defend-

ants deposited that draft with the bank for collection—not that it was marked 'Collection' on the draft, but that the understanding between the bank and the defendant, at the time it was done, and they received it as such and forwarded it here and the money was paid to its agent, the American National Bank, received for the purpose of collecting, and belonged—the proceeds when collected—to the defendant, or even of belonging—the proceeds—at the time it was placed at the bank, with the understanding that in event it was not paid that the bank should charge it back to the defendant—if that was the understanding, you will answer the first issue 'No.'

"It is not necessary that the defendant should satisfy you of that by the greater weight of the evidence, because the burden is upon the Old National Bank, the intervenors, to satisfy you by the greater weight of the evidence, and if it has satisfied you as I have outlined to you, you will answer the issue 'Yes'; if it has failed to satisfy you by the greater weight of the evidence, you will answer the issue 'No.'"

There was a verdict and judgment for the intervenor, and the plaintiff appealed.

*Jones & Williams for plaintiff.*
*Merrimon, Adams & Adams and A. Hall Johnston for intervenor.*

ALLEN, J. The objection to the introduction of the draft and the letter accompanying it are without merit. There was no controversy as to the identity or form of the draft, which the plaintiff admitted he paid, and the letter contained nothing prejudicial to the parties.

The parts of the depositions offered by the plaintiff as declarations or admissions were properly excluded.

The persons whose depositions had been taken were not parties, nor had they been examined as witnesses on the trial. They were officers and agents of the bank, and the declarations were not made in the course of business, but after the transaction in controversy, and the evidence falls within the long line of cases illustrated by *Rumbough v. Improvement Co.,* 112 N. C., 753, in which the declaration of the president and general manager of the company as to a part transaction was excluded upon the ground that he was a mere agent and as such did not have authority to bind the company by his declarations.

The evidence was also incompetent if offered as a part of the deposition, as it is not permissible to introduce selected portions of a deposition without offering the whole. *Boney v. Boney,* 161 N. C., 621, and cases cited; *Barton v. Morphes,* 13 N. C., 520.

The prayers for instructions generally contain correct statements of the law, but by comparison with the charge given, it will be seen that

his Honor substantially gave the plaintiff the benefit of them and that he followed the rule laid down in *Moon v. Simpson,* 170 N. C., 336, and in *Worth Co. v. Feed Co., ante,* 335.

He told the jury to answer the issue in favor of the plaintiff if there was an express or implied agreement' that the bank was taking the draft for collection or if this was the understanding resulting from the methods of doing business, which was as favorable as the plaintiff was entitled to.

No error.