## OLINGER v. SANDERS.

[No. 14,146. Filed January 30, 1931. Rehearing denied April 15, 1931.]

*Eldo W. Wood* and *William D. Curll,* for appellant.
*Leo H. Fisher,* for appellee.

Wood, J.—Appellant, as a creditor of the Huntingburg Bank, filed his petition in the Dubois Circuit Court, asking that his claim be allowed and ordered paid by appellee, receiver of said bank, as a preferred claim. This petition was transferred to the trial docket, trial was had, the claim was allowed as a general claim and ordered paid as such. Judgment was entered accordingly. Motion for a new trial was overruled. From said judgment this appeal is taken.

The following facts are disclosed by the record: The appellant was a contractor engaged in constructing a bridge pursuant to a contract with the State Highway Commission of Indiana; at 3:30 o'clock p. m. on February 20, 1929, appellant deposited with the Huntingburg

Bank, which was a bank of discount and deposit, a voucher payable to his order, drawn by the Auditor of State, upon the Treasurer of State for the sum of $4,597.20, also a check payable to appellant, issued by the Marquette Cement Manufacturing Company for the sum of $304; at the time of making said deposit, appellant filled out a deposit slip, upon a form which was in use and furnished by the bank to its customers. It was in words and figures as follows:

"HUNTINGBURG BANK.

"In receiving items for deposit and collection, this bank acts as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or in solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for his own negligence. This bank or its correspondents may send items directly or indirectly to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash, it may charge back any item any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited.

"Under this agreement, items listed below are hereby deposited by

"R. P. Olinger.

"Huntingburg, Ind. Feb. 20     1929.

"Currency.......................
"Coin...............................
"Checks as follows.................
"Marquette Cmt. Mfg. Co....... 304.00
"Auditor of state............... 4,597.20

"Total   $4,901.20

"ORIGINAL
"SEE THAT ALL CHECKS AND DRAFTS ARE INDORSED."

Appellant had been a customer of the Huntingburg Bank and had maintained a checking account there for some time previous to the date of the transactions above mentioned. On February 20, 1929, before making deposit of the two items, he had a balance in his checking account of $65.02. On the same day of the receipt of the state voucher and check by the bank, from appellant, the bank gave him credit in his pass book for the sum of $4,901.20 and entered the amount on the individual ledger sheet to his credit. On the same day, the state voucher, which had been indorsed by appellant "R. P. Olinger," was, together with the other items, mailed by the Huntingburg Bank to its correspondent, the Fletcher American National Bank of Indianapolis. On February 21, 1929, the Fletcher American National Bank indorsed said voucher "paid," charged it to the account of the Treasurer of State and placed the amount thereof, to wit, $4,597.20, to the credit of the Huntingburg Bank. On February 22, 1929, which was a legal holiday, the bank was not open for business. On the morning of February 23, 1929, the Huntingburg Bank was closed because of insolvency, and the appellee was thereafter appointed as receiver. The amount received from the state voucher passed into the hands of the appellee as receiver of the bank as part of its assets and he now has possession thereof. On February 20, 1929, the appellant drew five checks against his account amounting to the sum of $82.37. On February 21, 1929, he drew five checks against his account, amounting to the sum of $74.47. All these checks were paid by the Huntingburg Bank and charged to the appellant's account upon the same day upon which they were written. Appellant had, on several occasions previous to this, deposited state vouchers of the same kind in the Huntingburg Bank. They had never been held up or returned for non-payment. He testified that he did not intend to

check against the amount of the state voucher until it had cleared, but he did not communicate this fact to any of the officers of the bank.

The only error assigned is: "That the court erred in overruling appellant's motion for a new trial." The reasons alleged for a new trial are: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law.

The issue of fraud was not tendered in the pleadings, nor was there any evidence introduced upon the trial of the cause tending in any way to show that there was any fraudulent conduct on the part of anyone connected with the operation of the Huntingburg Bank, which induced the appellant to deposit the state voucher with the bank. That issue, therefore, is not in this case. *Union Nat. Bank* v. *Citizens Bank* (1899), 153 Ind. 44, 54 N. E. 97; *Barger* v. *Stults, Rec.* (1930), *ante* 87, 172 N. E. 549.

The state voucher was a negotiable instrument, §11360 Burns 1926, and the indorsement "R. P. Olinger" was a blank indorsement, §11393 Burns 1926.

The rule applying to bank deposits in this state, in the absence of some special agreement, was well stated by Jordan, C. J., in the case of *Union Nat. Bank* v. *Citizens Bank, supra*, as follows: "The rule which prevails and is generally recognized in regard to bank deposits is, that, where a deposit is made in a bank in the ordinary course of business, either of money or of drafts or checks received and credited as money, the title to the money or to the drafts or checks deposited, in the absence of any special agreement or direction, passes to the bank, and the relation of debtor and creditor arises between the depositor and the bank, without any element of a trust entering into the case. The bank, in such cases, acquires title to the money,

checks or drafts deposited, upon the implied agreement upon its part to pay full consideration for the same when called upon by the depositor in the usual course of business." The above rule is in harmony with the great weight of authority, and, since that date, the decision by Chief Justice Jordan has been adhered to by this court in the following cases: *Shopert* v. *Indiana Nat. Bank* (1908), 41 Ind. App. 474, 83 N. E. 515; *Second Nat. Bank* v. *Gibboney* (1909), 43 Ind. App. 492, 87 N. E. 1064; *Downey* v. *National Exchange Bank* (1911), 52 Ind. App. 672, 96 N. E. 403; *Beard* v. *Peoples Sav. Bank* (1913), 53 Ind. App. 185, 101 N. E. 325.

Where the facts and circumstances accompanying the deposit indicate an understanding between the parties that the check, draft, voucher or other instrument is deposited for collection only, the weight of authority is to the effect that the title does not pass to the bank in which the deposit was made. *Shopert* v. *Indiana Nat. Bank, supra; Downey* v. *National Exchange Bank, supra.* See note to *Fourth National Bank* v. *Bragg* (1920), 127 Va. 47, 102 S. E. 649, in 11 A. L. R. 1034.

Whether or not a deposit was a general or special deposit, and what the intention of the parties really was, are questions of fact for the court or jury trying the case to determine, from all the evidence as to custom, course of dealing, understanding and circumstances of the particular case under investigation. And, when the evidence is conflicting, it will not be reviewed by the Appellate Court. *Union National Bank* v. *Citizens Bank, supra; Downey* v. *National Exchange Bank, supra; Fourth National Bank* v. *Bragg, supra; Baldwin State Bank* v. *National Bank of Athens* (1915), 144 Ga. 181, 86 S. E. 538; *Spooner* v. *Bank of Donalsonville* (1916), 144 Ga. 745, 87 S. E. 1062; *Sternburg* v. *Crahon, etc., Co.* (1916), 172 N. C. 731, 90 S. W. 935; *Washington Shoe*

*Mfg. Co.* v. *Duke* (1923), 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611; *Weed* v. *Boston & Maine Railroad* (1925), 124 Me. 336, 128 Atl. 696, 42 A. L. R. 487.

The courts seem to be quite well agreed upon this proposition, but, in their application of the various tests as determining factors in ascertaining the intention of the parties, there is a conflict of authority.

When there is no definite understanding between the depositor and bank, some of the most salient facts considered by those courts holding that title to a check, draft or voucher passes immediately to the bank upon deposit, and upon which their opinions seem to be founded, are the following: That the indorsement is not restricted; that the depositor is immediately given credit for the amount on his pass book, and upon the books of the bank; that he is immediately given the right to check against the deposit; that he does actually check against the same, and that the checks are presented and paid. And, as was suggested in the case of *In re Ruskay* (1925), 5 Fed. (2d) 143, the interpretation placed upon the transaction by the parties themselves is given great weight in determining their intention. The court, speaking through Judge Rogers, said: "The entry on the books is, however, significant of the intent with which the trust company received the checks when the deposit was made. For the practical interpretation given to the deposit slips by the parties themselves, before any controversy arose, is the best indication as to what they intended and understood the transaction meant. That the practical interpretation given by the parties to an agreement while they are engaged in the performance of it may be considered by the courts is a well-established principle of law. In *Chicago* v. *Sheldon*, 9 Wall. 50, 54, 19 L. Ed. 594, the court declared that, 'In cases where the language used by the parties to the contract is indefinite or ambiguous, and, hence, of doubtful construc-

tion, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence, . . . in any executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one.'" In support of the above proposition see the following authorities: *Wasson, Treasurer, v. Lamb* (1889), 120 Ind. 514, 22 N. E. 729, 6 L. R. A. 191, 16 Am. St. 342; *Union Nat. Bank v. Citizens Bank, supra; Fourth National Bank v. Bragg, supra; Weed v. Boston & Maine Railroad, supra; Spooner v. Bank of Donalsonville,. supra; Sanders v. W. B. Worthen Co.* (1916), 122 Ark. 104, 182 S. W. 549; *Acme, etc., Feed Co. v. Metropolitan Nat. Bank* (1924), 198 Iowa 1337, 201 N. W. 129;. *Midland Nat. Bank v. Roll* (1895), 60 Mo. App. 585; *Palo Alto County v. Ulrich* (1924), 199 Iowa 1, 201 N. W. 132; *Williams v. Cox* (1896), 97 Tenn. 555, 37 S. W. 282; *Walker & Brock v. Ranlett Co.* (1915), 89 Vt. 71, 93 Atl. 1054.

The facts in the case at bar are very similar to many of the cases above cited, and, unless the statement upon the deposit slip had the effect of limiting the deposit of the state voucher to a deposit for collection only, it must be held that the title thereto passed to the bank.

Although there is not entire uniformity among the courts, the weight of authority supports the view that, while a statement on the deposit slip or in the pass book, such as here involved, should be considered in determining the intention of the depositor and the bank, it is not conclusive. In the case of *Douglas v. Federal Reserve Bank* (1926), 271 U. S. 489, 46 Sup. Ct. 554, 70 L. Ed. 1051, the pass book had printed upon its face the following: "All out of town items credited subject to final payment." Justice Stone, delivering the opinion of the court, in commenting upon the effect of the above statement, used this language: "It is not

necessary to decide any of these questions here. For when paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes the owner of the paper, and in making the collection is not the agent of the depositor. (Citing authorities.) Such was the relation here between the plaintiff and the Douglas Bank, unless it was altered by the words printed on the pass book to the effect that out-of-town items were credited 'subject to final payment.' The meaning of this language, as the cashier of the Douglas Bank testified, and as the court below held, was that if the check was not paid on presentation, it was to be charged back to the plaintiff's account. The check was paid and the drawers and indorsers discharged. (Citing authorities.) Without these words the relationship between the plaintiff and the bank was that of indorser and indorsee; and their use here did not vary the legal rights and liabilities incident to that relationship, unless it dispensed with notice of dishonor to the depositor. As was said by the court in *Burton* v. *United States, supra,* 297:

"'The testimony . . . as to the custom of the bank when a check was not paid, of charging it up against . . . depositor's account did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more. There was nothing whatever in the evidence showing any agreement or understanding as to the effect of the transaction between the parties—the defendant and the bank—making it other than such as the law would imply from the facts already stated.'"

See, also, *Plumas County Bank* v. *Bank of Rideout, etc.* (1913), 165 Cal. 126, 131 Pac. 360, 47 L. R. A. (N. S.) 552; *Burton* v. *United States* (1905), 196 U. S. 283, 25

Sup. Ct. 243, 49 L. Ed. 482; *Raynor* v. *Scandinavian-American Bank* (1922), 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716; *Vickers* v. *Machinery Warehouse & Sales Co.* (1920), 111 Wash. 576, 191 Pac. 869; 2 Bolles, Modern Law of Banking §22, p. 535; 2 Morse, Banks and Banking (5th ed.) §§577, 578.

In the case of *Raynor* v. *Scandinavian-American Bank, supra,* the deposit slip contained this stipulation printed on its margin, "checks on this bank and other Tacoma clearing-house banks will be credited conditionally. If not found good at the close of business they will be charged back to the depositor and the latter notified of the fact. In making this deposit the depositor hereby assents to the foregoing conditions." In disposing of this phase of the case, the court said: "The second of the contentions is, we think, also without foundation. The condition written on the deposit slips amounted to nothing more than an agreement between the bank and each of the several depositors that, if the check deposited was not found to be good at the close of business on the day of the deposit, it could be charged back to the depositor. Such an agreement, we held in *Vickers* v. *Machinery Warehouse & Sales Co.*, 111 Wash. 576, 191 Pac. 869, did not constitute a deposit for collection, but was a sale of the paper to the bank, and passed title to the paper, subject only to the right of rescission if the paper subsequently proved to be without value. In that case, we said: 'It has been argued that the fact that the Chicago Bank took this draft considering that it had the right to charge the same back to the machinery company if it were not paid, shows that the bank did not become the absolute owner of the draft; that it could not maintain the dual position of being the absolute owner and at the same time reserve the right to charge back if the draft were not paid. This argument is fully answered by the Supreme Court of the United States in

*Burton* v. *United States, supra,* when it says: "The testimony of Mr. Brice, the cashier of the Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more." '"

In the case of *Jefferson Bank* v. *Merchants Refrigerating Co.* (1911), 236 Mo. 407, 139 S. W. 545, the court held that an indorsement upon the cover of the deposit book reading thus, "this bank, in receiving out of town checks and other collections, acts only as your agent; and does not assume any responsibility, beyond due diligence on its part, the same as on its own paper," could be waived by the bank, and that the title to the draft deposited by a customer passed to the bank.

The weight of authority also sustains the conclusion that the title to the voucher in this case passed to the bank; that, paraphrasing the language of the court in the case of *Raynor* v. *Scandinavian-American Bank, supra,* "the condition written on the deposit slip amounted to nothing more than an agreement between the Huntingburg Bank and the appellant, that if the state voucher deposited was found not to be good, it would be charged back to the bank," would not prevent the passing of title.

The effect of the right to charge back a check to the depositor, on passing of title to the bank, was disposed of by Justice Stone, in the case of *Douglas* v. *Federal Reserve Bank, supra,* in this language: "While there is not entire uniformity of opinion, the weight of authority supports the view that, upon the deposit of paper unrestrictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or

agreement to charge the paper back to the depositor in the event of dishonor." In support of this statement many authorities are cited. The following authorities also sustain this statement of the law: 2 Morse, Banks and Banking, *supra;* 2 Bolles, Modern Law of Banking, *supra; Palo Alto County* v. *Ulrich, supra; Midland Nat. Bank* v. *Roll, supra; Walker & Brock* v. *Ranlett Co., supra.*

The appellant testified that he did not intend to check against the amount of the deposit represented by the state voucher until it had been paid, but that he did not communicate this fact to the bank. His intention, of which the bank had no notice, could have no weight in determining the nature of the transaction, *Washington Shoe Mfg. Co.* v. *Duke, supra.*

The facts also disclose that the voucher was paid on February 21, 1929, and that the Fletcher American National Bank had given the Huntingburg Bank credit for the amount thereof on that day. The transaction was thus completed, so that the relation of debtor and creditor was created between the appellant and the Huntingburg Bank before its failure. *Union Nat. Bank* v. *Citizens Bank, supra; Palo Alto County* v. *Ulrich, supra; King* v. *Bowling Green Trust Co.* (1911), 145 App. Div. 398, 129 N. Y. Supp. 977.

Finding no error, the judgment is affirmed.